[Nos. G008555, G008556, G008557, G008558. Fourth Dist., Div. Three. Dec. 19, 1989.]

In re RYAN B. et al., Minors, on Habeas Corpus.

COUNSEL

Ronald Y. Butler, Public Defender, Carl C. Holmes, Assistant Public Defender, James Dean Allen, Thomas Havlena and Carol E. Lavacot, Deputy Public Defenders, for Petitioners.

No appearance for Respondent.

Cecil Hicks, District Attorney, James G. Enright, Chief Deputy District Attorney, Edgar A. Freeman, Assistant District Attorney, John D. Conley and R. L. Fredrickson, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**SCOVILLE, P. J.**—The question presented is whether the juvenile court may detain an out-of-custody minor who appears, without counsel, for a pretrial conference without notice he or she might be detained.

### I

Each of these minors sought writs of habeas corpus after being detained by the juvenile court when they appeared out of custody, without counsel, for a pretrial conference. We granted each a temporary release and issued orders to show cause returnable in this court. On our own motion, we consolidated the matters because they present nearly identical issues and involve detention orders made by the same juvenile court judge.

### A. *In re Ryan B.*

A petition was filed on June 15, 1989, requesting 16-year-old Ryan B. be declared a ward of the court pursuant to Welfare and Institutions Code section 602 because he had vandalized 11 different automobiles. The offenses were allegedly committed on April 1, 1989. The police investigating the incident detained the minor on April 10, 1989. He admitted his involvement to the officers and was released to his mother. A pretrial conference was scheduled for July 3, 1989, but no one appeared at that time. The court directed the minor and his mother to appear on August 8, 1989. A second petition was filed on July 21, 1989, adding 12 more counts of vandalism, all allegedly occurring on the same date as the other offenses. The minor first appeared in the juvenile court on August 8, 1989, at a pretrial hearing.

Ryan B. appeared without counsel and without prior notice that the court might take him into custody. The judge reviewed the probation department report and then began the oral proceedings by stating: "You are here on both of these petitions. You also did damage to at least 22 vehicles with a baseball bat. It also indicates here that you have had a problem smoking marijuana, drinks twice a month—a six-pack per night. Your mother says your attitude is poor and you are very demanding."

The probation officer recommended the minor be declared a ward and placed on probation with the usual terms and conditions, including the specific condition that he serve 15 days on the juvenile court work program. The judge, however, found it to be of immediate necessity that the minor be detained for the protection of property of others, and took him into custody. The matter was set for a redetention hearing two days later and the public defender was appointed to represent the minor. On August 10th, a juvenile

court commissioner ordered the minor further detained until his August 25th jurisdictional hearing. Because statutory procedures were not followed by the trial judge, we ordered his release after this petition was filed.

## B. *In re Jamie S.*

On April 28, 1988, the juvenile court declared Jamie S. a ward of the court after finding he had committed grand theft. The minor was placed on probation and directed to participate in the community work program for 15 days. He was also required, inter alia, to submit to substance abuse testing every week, to seek and maintain employment, to attend school and to pay restitution in the amount of $650. On July 24, 1989, a petition was filed under section 777 of the Welfare and Institutions Code, alleging the minor had violated his probation by being truant, failing to secure employment, failing to submit to testing and failing to pay restitution. A notice of hearing was sent to the minor and his parents advising them to appear in court for a pretrial hearing on August 8, 1989.

Jamie S. appeared in court without counsel and without prior notice that the court might take him into custody. A report prepared by the probation department recommended he be continued a ward. It also recommended he be ordered to serve 180 days in an appropriate local facility if the petition were sustained. The judge reviewed the probation department report and then began the oral proceedings by noting the seriousness of the recommendation. The judge told the minor he would not even discuss the proposed disposition without an attorney being present. The minor asked for counsel. The judge said he would appoint the public defender and then stated, "It appears to me that you are in violation of many court orders based on what I have seen here in this particular report, so I am going to order you detained at this time, and we will set this for redetention hearing two days from today . . . ." The public defender was appointed to represent the minor and was present on August 10th, when a juvenile court commissioner ordered the minor further detained until his August 25th probation violation hearing. Because statutory procedures were not followed by the trial judge, we ordered his release after this petition was filed.

## C. *In re Andres M.*

On June 24, 1989, Andres M. was arrested for stealing a bicycle. He was taken to the police station and juvenile hall but was released to his cousin the following day. A petition was filed on July 24, 1989, requesting the minor be declared a ward of the court because he had committed two misdemeanor offenses (petty theft and resisting arrest). A notice of hearing

was sent to the minor and his relatives advising them to appear in court for a pretrial hearing on August 8, 1989.

Andres M. appeared in court without counsel and without prior notice that the court might take him into custody. The judge reviewed the probation department report which recommended the minor be declared a ward but that the minor be released to his brother and the wardship terminated without any penalties imposed. The judge, however, began the oral proceedings by noting the minor was present with a friend. The judge stated: "It appears [the minor] has been here for about one month having no parents in the area. [¶] The report is a little bit vague on who he stays with; although, apparently, cousins have stood up for him in the past. Although, they have indicated that they will be glad when a brother returns, because they are unable to supervise him. They were hesitant to accept responsibility. According to the report, the brother resides or is now in Mexico. That's the last they heard. [¶] So it appears to me that this minor is without effective supervision, so for his own welfare, for the protection of the minor, I am going to order him detained at this time." The matter was set for a redetention hearing two days later and the public defender was appointed to represent the minor. On August 10th, a juvenile court commissioner ordered the minor further detained until his August 25th jurisdictional hearing. Because statutory procedures were not followed by the trial judge, we ordered his release after this petition was filed.

### D. *In re Paul R.*

Paul R. was arrested on July 1, 1989, for stealing two packs of cigarettes from a supermarket. He was released to his mother the same day. He was already a ward of the court and had previously served 40 days in custody for burglary. On July 20, 1989, a petition was filed under section 777 of the Welfare and Institutions Code, alleging the minor had committed the misdemeanor offense of petty theft. A "Notice of Hearing on Petition and Proof of Service" was sent to the minor and his parents, advising them of their required attendance in court for a pretrial hearing on August 7, 1989. A copy of the petition was attached. The notice recites: "Failure to attend and bring the minor with you may be deemed contempt of court. At the hearing it will be decided whether or not the allegations in the petition are true. [¶] Said minor and his parent or guardian or adult relative are entitled to have an attorney present at the hearing on the petition. If such parent or guardian or adult relative is indigent and cannot afford an attorney and such minor or his parent or guardian or adult relative desires to be represented by an attorney, such parent or guardian or adult relative shall promptly notify the Clerk of the Juvenile Court."

The probation department prepared a report for the pretrial hearing which recommended the minor be continued a ward of the court and ordered to serve 60 days in an appropriate local facility if the petition were sustained. The judge began the oral proceedings by noting this was not the minor's first petty theft. He said: "In fact, you have quite a number of theft-related offenses. [¶] As the probation officer indicates, I am quoting from the probation department here. It appears you are out of control and you are having trouble in school, apparently, just not getting the message so far as taking other people's property. Appears to me, sir, that you represent a danger to the persons and property of others because of these continued theft offenses, and that you are in violation of a court order as well."

Without conducting any type of evidentiary hearing the judge took the minor into custody, having found he had violated a court order and that it was of immediate necessity that he be detained for the protection of the property of others. The matter was set for a redetention hearing two days later and the public defender was appointed to represent the minor. On August 9th, a juvenile court commissioner ordered the minor further detained until his August 28th jurisdictional hearing. Because statutory procedures were not followed by the trial judge, we ordered his release after this petition was filed.

## II

Three of the minors (Ryan B., Jamie S. and Paul R.) later appeared in court and disposed of their cases. Andres M. failed to appear after we ordered his release. His nonappearance while the case is under appellate review would ordinarily result in a dismissal of the petition. As to the other minors, although the detention question is moot, the parties agree we should decide the issues presented. ■ "We may . . . decide moot cases that present important questions affecting the public interest, especially in controversies so short-lived as to evade normal appellate review. [Citations.]" (*San Jose Mercury News* v. *Municipal Court* (1982) 30 Cal.3d 498, 501, fn. 2 [179 Cal.Rptr. 772, 638 P.2d 655]; see also *In re Talbott* (1988) 206 Cal.App.3d 1290, 1292 [254 Cal.Rptr. 421].)

## III

■ Petitioners' attorney contends the juvenile court is without jurisdiction to detain minors other than as specifically authorized by the Welfare and Institutions Code. Nothing expressly authorizes the court to detain minors who appear out of custody for their first court appearance. The prosecution argues, however, that a minor's custody status is always open to judicial review, with or without express statutory authority.

We begin our analysis by reviewing the relevant statutes. Welfare and Institutions Code section 625[1] permits a peace officer to take a minor into "temporary custody" without a warrant when, among other things, the minor is suspected of committing a crime. Section 626 then delineates the next step: The officer may either release the minor, deliver the minor to a protective agency, release the minor with a written promise to appear before the probation department, or take the minor "without unnecessary delay" before the probation officer. "In determining which disposition of the minor to make, the officer shall prefer the alternative which least restricts the minor's freedom of movement, provided that alternative is compatible with the best interests of the minor and the community." (§ 626.)

If the minor is taken before the probation officer, there is a secondary review of the officer's decision not to release the minor. (§ 628.) Related statutes delineate the relevant criteria in making the decision whether to release or detain the minor. (§§ 635, 636.) Those statutes are supplemented by the rules of court. (See Cal. Rules of Court, rules 1470-1477.) If still not released, the minor is entitled to a formal detention hearing in court on the next judicial day. (§ 631.)

Corollary rules delineate the procedures if the minor is not detained by a peace officer or the probation department. Section 662 authorizes the court to issue a warrant for the minor's arrest if "it appears to the court that the citation [to appear out of custody] will probably be ineffective . . . ." Section 663 also authorizes the issuance of an arrest warrant, anytime after a petition has been filed, when "it appears to the court that the conduct and behavior of the . . . minor may endanger the health, person, welfare, or property of himself or others, or that the circumstances of his home environment may endanger the health, person, welfare or property of [the] minor . . . ." Both sections 662 and 663 effectively allow judicial review of earlier decisions, by a peace officer and/or the probation department, not to detain a minor suspected of criminal activity.

Two other court rules discuss detention. Rule 1477(a) inferentially implies the authority for revoking a minor's out-of-custody status: "The court shall also direct the probation officer that, in the event of any change in circumstances pending the jurisdiction hearing which might materially affect the court's detention decision, the matter shall be immediately returned to court for further consideration." And section 702 and rule 1490(b) specifically authorize the court to rehear the detention question after the jurisdictional hearing and pending the dispositional hearing. Nothing in the Welfare and Institutions Code or the rules of court, however,

---

[1] All references are to the Welfare and Institutions Code unless otherwise indicated.

discusses a detention hearing like those conducted here—when the minor first appears in court out of custody.

■ *In re Talbott, supra*, 206 Cal.App.3d 1290 reiterated the significance of the statutes in keeping with "the goals of juvenile justice: '. . . to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public.' [Citations.]" (*Id.*, at p. 1294.) "A juvenile offender is not entitled to bail. However, the safeguards and due process requirements set forth in Welfare and Institutions Code section 628 et seq. are ' ". . . procedural protections [that] must be observed in order to guarantee the fundamental fairness of juvenile proceedings. . . ." ' [Citation.]" (*Id.*, at p. 1292.)

Our Supreme Court has acknowledged the Legislature's intent to eliminate "excessive and unwarranted detention of children" when it enacted the Juvenile Court Law in 1961. (*In re Robin M.* (1978) 21 Cal.3d 337, 342 [146 Cal.Rptr. 352, 579 P.2d 1].) The resultant statutory scheme limits the grounds for detention as well as the length of detention and restrains those exercising the decision to detain by imposing strict time limitations during which that decision must be made. The Legislature could have made those decisions subject to automatic judicial review quite easily but did not. We are left with a very definitive set of rules which govern when and how a minor may be detained for juvenile court jurisdiction.

There is little relevant case law. *In re Macidon* (1966) 240 Cal.App.2d 600 [49 Cal.Rptr. 861] is analogous, however. The juvenile court in *Macidon* had issued a memorandum which required a detention hearing on every felony case, regardless of whether the minor was in custody or had been released by a peace officer or the probation department before any court appearance. The police had released Macidon to his mother after initially arresting him for stealing a woman's purse. The mother signed a citation for the minor to appear at the probation department, which she and the minor did. Thereafter, a petition was filed and the mother was advised orally that a detention hearing would be held at the minor's first appearance in court, even though he was out of custody. At that hearing the court ordered the minor detained.

The appellate court found numerous errors in the proceedings leading to the minor's detention. It was assumed there was no express statutory authority for his detention; the authority to detain was exercised under the court's policy memorandum. In dicta, the appellate court did not discuss the memorandum directly, but did note: "[W]here, as here, the minor has been relinquished to the custody of his parent and remained there for a

period of over five weeks there should be some evidence to show new or previously undiscovered facts relating to one of the grounds for detention in order to justify such an order. The case is analogous to those wherein there has been an arbitrary increase in the amount of bail." (240 Cal.App.2d at p. 608.)

Two subsequent cases adopted that language from *Macidon* and assumed "new or previously undiscovered facts" are necessary to justify detention if the minor appears in court out of custody initially. *In re Talbott, supra,* 206 Cal.App.3d 1290; *In re Kevin B.* (1981) 122 Cal.App.3d 808 [176 Cal.Rptr. 237].) The prosecution, however, urges we reject that line of authority as dicta. It contends: "All decisions on detention (including release) should ultimately be judicial decisions and the temporary discretion placed into the hands of peace officers should be subject to de novo review once Juvenile Court Jurisdiction is established." (Return to petn., at p. 11.) There is no authority for that statement, however. And the lack of authority flies in the face of our conclusion that detention is a statutory creature, subject to strict procedural due process limitations. Granting judicial review de novo would circumvent the statutory time limitations. Moreover, that approach contradicts the apparent legislative intent which disfavors detention and removing minors from their home environments.

■ We therefore conclude that judicial authority to detain a minor is limited to the specific statutory procedures which specify when and how a minor may be detained. If the court disagrees with a peace officer's decision not to detain, or the probation department's decision not to detain, it might be appropriate to issue an arrest warrant. If circumstances change the court might consider detention pursuant to rule 1477(a), but the minor should have notice and be advised of his right to counsel to insure due process before revoking his out-of-custody status. None of those procedures was employed here. Because there is no other statutory authority to order the minor detained after the arresting agency or the probation department initially decides not to detain, the detention orders here were improper.

We note several other concerns with the orders at issue. At no time were the minors notified of the court's intent to review their custody status. Indeed, counsel was not appointed until *after* the court ordered the minors detained. In several instances it appears the court made factual findings based on the probation officer's report, without an evidentiary hearing. In two of the cases the judge stated he believed the minors had violated court orders. Those were ultimate issues to be resolved at the jurisdictional hearings, not at a pretrial conference. Lastly, "redetention" two days later does

not cure the harm. The court erred in ordering these minors detained when each first appeared, without counsel, for an out-of-custody pretrial hearing.

For the reasons stated in Part II of this opinion, the habeas petitions are dismissed as moot.

Crosby, J., and Wallin, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied March 15, 1990.