Filed 9/29/16  In re N.M. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re N.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>N.M.,<br><br>        Defendant and Appellant. | A148099<br><br>(Contra Costa County<br>Super. Ct. No. J16-00198) |

N.M., a 17-year-old minor at the time of his offense, pled no contest to violent felony, first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a), 667.5, subd. (c)(21)), and now appeals his one-year commitment to the Orin Allen Youth Rehabilitation Facility.  N.M. urges instead that he be placed at home on supervised probation, subject to a stayed commitment to the youth facility.  The juvenile court's disposition was not an abuse of discretion, and we affirm.

**BACKGROUND**

N.M. was born in Pakistan, to parents who eventually came to live in Afghanistan where his father still remains.[1]  N.M. and his mother emigrated to the United States in 2011 when N.M. was thirteen, and are presently here legally, seeking asylum.  When they

---

[1]  We state the facts in the light most favorable to the judgment.

arrived, N.M. spoke no English, didn't fit in with other kids and faced ridicule. At first they lived with relatives in Southern California, and later moved to Northern California.

At the time of N.M.'s offense, he and his mother were living with his older sister and her five-year-old son, in his sister's federally subsidized, low-income housing in San Ramon. His sister, a full-time college student on financial aid, supported all four of them solely out of her $500/month earnings as a part-time librarian. N.M. and his mother are ineligible for public benefits.

On November 23, 2015, at about 10:00 a.m., N.M. was arrested with two other youths driving a stolen car. He admitted to police that he and his friends had stolen it; he also admitted they vandalized it with spray paint. All three were issued juvenile citations and released to their parents.

The burglary took place the following month, at approximately 11:00 a.m. on the morning of December 24, 2015. N.M. had been knocking on the doors of at least two homes in a San Ramon condominium complex that morning, suspiciously asking for cash donations to the high school football team but without any paperwork or credentials. The owner of a third condominium left his house for about 30 or 40 minutes to go look for his cat and left the door to his home ajar. When the homeowner returned around 11:15 a.m., he found a blanket full of wrapped Christmas presents on the ground outside his home and his tan slippers, all taken from his house. N.M. had dumped his own white sneakers on the ground too, making off with the homeowner's black Nike high-top sneakers. There had been no forced entry and the house had not been ransacked. The homeowner's college-age son, and his daughter and her friend had been asleep upstairs.

According to the homeowner, $950 in cash had been stolen: $800 in family savings intended for assistance to relatives abroad and $150 from his son's wallet, which were summer job earnings his son had been planning to spend on Christmas shopping that day. Also stolen was a key to the daughter's modest, eight-year-old car, a pair of black pants and a $100 Nordstrom gift certificate both of which had been under the Christmas tree. N.M. also stole the son's driver's license. Most of the stolen items were eventually recovered.

N.M. was immediately traced to the burglary by a neighbor.  Police went to his home but he was out, and he refused to return home to meet with police when they reached him by phone.  Police spoke with his sister, who was there when they arrived.  She explained the family's living arrangements, and told police she was afraid of getting evicted because her brother was in constant trouble that she couldn't handle and so she wanted her mother and brother to go live with relatives in Los Angeles.  She permitted police to search his room, where they recovered the stolen driver's license.  She also gave them a key that appeared to belong to a Maserati which police later learned did not belong to the family that had been burglarized.

When N.M. returned home later that day, his sister confronted him, he repeatedly told her he was sorry, she told him to immediately pack his belongings and she then drove him to Southern California to be taken to an uncle's house.  She later told police she did this even though she knew police were looking for her brother because she assumed he would be released back to her custody, as he had been for the vehicle theft arrest.  She didn't want to get evicted from her apartment complex, which was part of a crime-free housing program.

N.M. was under the influence of marijuana when he committed the burglary, and later expressed regret.  The incident was extremely frightening and upsetting to the homeowner and his family.

On February 19, 2016, the Contra Costa County District Attorney filed a juvenile wardship petition (see Welf. & Inst. Code, § 602, subd. (a)),[2] charging N.M. with one count of vehicle theft (Veh. Code, § 10851, subd. (a)), and one count of first degree burglary (Pen. Code, §§ 459, 460, subd. (a)), charged as a violent felony on the ground a person was present in the residence during its commission (Pen. Code, § 667.5, subd. (c)(21)).  At the arraignment several weeks later on March 2, 2016, the juvenile court ordered N.M. taken into custody on the ground he was dangerous.

---

[2]  Unless otherwise noted, all further statutory references are to the Welfare and Institutions Code.

3

At his next court appearance, N.M. pled no contest to the first degree, violent felony residential burglary count which he was advised carried a maximum six-year term, and the car theft count was dismissed.

The probation department concluded N.M. was at low risk of reoffending but recommended he be committed to the youth facility for nine months in order to hold him accountable for his actions, even though it also noted, "[t]he family dynamics do not indicate that Out-of-Home Placement is justified at this time." The probation department concluded "it appears [N.M.'s] unlawful behavior is likely to continue without significant intervention in a structured environment which includes substance abuse treatment, and cognition behavioral programming. Additionally, the public must be protected. It is not clear how much supervision [N.M.] has at this point, given his mother is temporarily living in Alameda County for employment."[3]

According to the probation report, N.M.'s transition from Afghanistan to the United States had not been easy. But he had a good relationship with his parents, though his father remains in Afghanistan, and "an off and on" relationship with his older sister; he aspired to graduate high school and college and pursue a medical or legal career; and he had admitted his wrongdoing and wanted to help make amends to his victim. N.M. attributed his actions to having smoked marijuana and not having a job. N.M.'s older sister attributed the incident to the family's meager means—she blamed herself for not giving him pocket money, and thought their "lack of provisions" might have contributed too. While in detention at juvenile hall, N.M. behaved satisfactorily and mostly kept to himself. The probation department noted, too, that he had been bullied by two other youths there, who were calling him "Osama bin Laden's cousin."

Yet the probation report also noted areas of concern. It detailed a history of poor high school attendance and poor grades (with some exceptions) and disciplinary

---

[3] N.M.'s sister reported that as of March 1, 2016, their mother had been working temporarily as a live-in homecare assistant for an elderly woman in Fremont, California. By the time of the disposition hearing, their mother reportedly was willing to quit her job if necessary to supervise N.M. full time if he were placed on home probation.

problems too, including a fight that resulted in a five-day suspension and an incident involving marijuana possession at school that resulted in a three-day suspension. In addition, N.M. got kicked off the football team for fighting with another team member, and got dropped from the wrestling team for poor grades. N.M. also had been using marijuana since freshman year in high school, eventually on a daily basis until he claimed to have stopped altogether after the burglary. The probation department also wrote that N.M. excused his actions far too easily, blaming the incident on his drug use and lack of a job, and was critical of N.M. for potentially jeopardizing his sister's housing situation.

N.M. wrote a two-page letter to the court expressing regret for the incident, and asking for "a second chance, because I know that I've done something that's very illegal and unlawful."

A contested disposition hearing took place on March 23, 2016, at which the homeowner testified, and at its conclusion the juvenile court adjudged N.M. a ward of the court and ordered him removed from his family's custody. The juvenile court rejected defense counsel's request for supervised probation, subject to a suspended ranch commitment "hanging over his head." The juvenile court found under section 726, subdivision (a)(3) that N.M.'s welfare required his removal, and committed him to the Orin Allen Youth Rehabilitation Facility for a one-year, mandatory sentence, followed by a 90-day conditional release period.

This timely appeal followed.

## DISCUSSION

Under section 202, the juvenile court enjoys "broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public." (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.) "Nor does the court necessarily abuse its discretion by ordering the most restrictive placement before other options have been tried." (*Ibid.*) In particular, a juvenile court's decision to remove a minor from parental custody under section 726 is reviewed for abuse of discretion. (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1154.)

5

We cannot substitute our judgment for that of the juvenile court, much as reasonable minds might differ as to the appropriate disposition to be made in this case. To us, this record is fairly susceptible to the interpretation that an immigrant youth facing difficult cultural challenges made a terrible mistake that, while it ruined one family's Christmas holiday, involved no actual violence or weapons or injury; he sincerely regrets his actions and has the support of his immediate family to try to take the steps necessary to right his life. That said, we are not at liberty to decide this question anew. Given the gravity of the felony N.M. admitted (brazenly burglarizing a home while people were present), his admission to police that he previously stole and vandalized a vehicle,[4] his unexplained possession of another car key not belonging to his burglary victims, combined with other circumstances such as his marijuana use, poor grades and disciplinary problems at school, we cannot say the out-of-home placement is an abuse of discretion. (See, e.g., *In re Khamphouy S.* (1993) 12 Cal.App.4th 1130, 1135 [affirming order committing 17-year-old to juvenile ranch facility for possession of live ammunition and violation of probation]; *In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329–1330 [affirming order committing minor to out-of-home camp facility rather than supervised probation at home, due to gravity of minor's weapons offense]; *In re Nicole H.*, *supra*, 244 Cal.App.4th at p. 1155 [no abuse of discretion in removing first-time juvenile offender from parental custody despite low risk of re-offending; juvenile committed violent physical assault, showed lack of remorse and required treatment in a structured setting].)

N.M. also argues the out-of-home commitment unconstitutionally infringes on his substantive due process right to remain living with his family, because it is not supported by a "compelling necessity." We decline to address that issue because it was not raised below and has been forfeited. Because N.M. didn't ask the juvenile court to apply a

---

[4] N.M. contends the juvenile court could not consider the facts of the auto theft because the count was dismissed without a so-called *Harvey* waiver. However, *People v. Harvey* (1979) 25 Cal.3d 754 does not apply to juvenile proceedings. (*In re Jimmy P.* (1996) 50 Cal.App.4th 1679, 1683.)

compelling necessity standard, the court had no occasion to address it.  (See *In re M.H.* (2016) 1 Cal.App.5th 699, 713–714.)

In addition, were the issue not forfeited we would reject it.  N.M. cites no authority requiring a showing of compelling necessity before a juvenile who has been adjudged a ward of the court for committing a violent felony can be removed from his parent's custody and committed to a youth facility for rehabilitation.  We think it implicit in the juvenile delinquency statutes, which authorize an out-of-home custodial commitment in the juvenile court's discretion (§ 202, subd. (e)(4)), that commission of a felony offense *is* a compelling necessity.  Our decision in *In re James R.* (2007) 153 Cal.App.4th 413 (*James R.*), cited by N.M., did not address this question.  On the contrary, it recognized the fundamental, constitutional right of a juvenile adjudged a ward of the court *and removed from parental custody* to parental visitation.  (*Id.* at p. 417.)[5] Far from supporting the adoption of a restrictive standard for out-of-home placements, we called it " 'clear' " in *James R.* that " 'juvenile delinquency laws are designed to provide the juvenile court *maximum* flexibility to craft suitable orders aimed at rehabilitating the particular ward before it.' "  (*Id*. at p. 432, italics added.)

Finally, we reject N.M.'s contention the disposition entered in this case was the product of discriminatory religious and/or national origin-based animus.  At all times, the juvenile court conducted itself respectfully toward all concerned, including temporarily adjourning the disposition hearing to secure a Farsi interpreter for N.M.'s mother.  We agree with N.M. that the juvenile court acted improperly in placing him into custody at the arraignment hearing without any prior notice or evidence of changed circumstances (see *In re Ryan B.* (1989) 216 Cal.App.3d 1519; *In re Daniel M.* (1996) 47 Cal.App.4th 1151, 1155), but we cannot infer discriminatory animus from the mere commission of judicial error.  We also note an odd cultural reference contained in the probation report,

---

[5]  And even so, "[t]hough a minor has a constitutionally based right to visitation with family members while placed outside the home (*James R.*, *supra*, 153 Cal.App.4th at p. 417), this does not translate into a corresponding constitutional right to have the travel to and from those visits funded by the state."  (*In re L.M.* (2009) 177 Cal.App.4th 645, 651.)

stressed by N.M., which observed N.M. "did not need to steal for survival and he knows the punishment for theft in his country, Afghanistan, is losing a hand." We infer no animus from this statement either, however; N.M.'s sister volunteered that information to the probation officer. In any event, we presume the juvenile court ignored this irrelevant observation.

## DISPOSITION

The dispositional order is affirmed.

_____
STEWART, J.

We concur.

_____
KLINE, P.J.

_____
MILLER, J.

*In re N.M.* (A148099)