Filed 10/7/21  In re A.G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE , <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.G., <br><br> Defendant and Appellant. | F082101 <br><br> (Super. Ct. No. 17CEJ600227-3) <br><br> **OPINION** |

## THE COURT*

APPEAL from an order of the Superior Court of Fresno County.  Gregory T. Fain, Judge.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Hill, P. J., Levy, J. and Detjen, J.

Minor, A.G., appeals from a disposition order adjudging him a ward of the juvenile court and committing him to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ). On appeal, minor argues that the juvenile court abused its discretion in committing him to the DJJ because insufficient evidence supported the court's conclusion that no less restrictive alternative placement was suitable. The People disagree. We affirm.

## PROCEDURAL SUMMARY

On May 19, 2020,[1] the Fresno County District Attorney filed a first amended juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)) alleging minor committed second degree robbery (Penal Code, § 211;[2] count 1), assault with a firearm (§ 245, subd. (a)(2); count 2), and misdemeanor battery (§ 242; count 3). As to counts 1 and 2, the petition alleged minor committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and personally used a firearm (§§ 12022.5, subd. (a), 12022.53, subd. (b)).[3]

On September 1, minor admitted the truth of count 1 and the related gang enhancement and the section 12022.5, subdivision (a) firearm enhancement. In exchange, counts 2 and 3 and the section 12022.53, subdivision (b) firearm enhancement related to count 1 were dismissed on the People's motion.

On October 7, the juvenile court held a disposition hearing at which it removed minor from the custody of his parent, adjudged him a ward of the court, and committed him to the custody of the DJJ for a period not to exceed 13 years. The court awarded him 145 days of custody credit against that maximum period of confinement.

---

[1]     All further dates refer to the year 2020.

[2]     All further statutory references are to the Penal Code.

[3]     The section 12022.53, subdivision (b) allegation was made only in relation to count 1.

2.

On November 18, minor filed a notice of appeal.

## FACTUAL SUMMARY[4]

On May 16, confidential victim 1 (CV1) was camping with his friends and family near Choinumni Park (the park). CV1, confidential victim 2 (CV2), and confidential victim 3 (CV3) decided to go fishing. They drove to an area in the park where there was a body of water. While CV3 was driving, CV1 was playing with a green laser that he may have shined on people at another campsite. A silver vehicle began following them. When CV3 pulled the car to the side of the road, five to seven Hispanic males, including minor, exited the silver vehicle and approached them. One of the males, D.M.—whom CV1 recognized as a gang member—pointed a black pistol at CV1 and told him to "give him everything he had." D.M. then reached into CV1's pockets and took his red cellular phone. A second male, C.G.—whom CV1 also recognized as a gang member—pointed a black pistol at CV1 while D.M. went through his pockets. CV1 called C.G. by his name and asked him to " 'please stop.' " Minor approached the passenger side of CV3's car and held a gun against CV1's neck and asked him where he was from. One of the males then threw a rose gold cellular phone at CV1 and the males, including minor, left.

At some point during the confrontation, minor punched CV2 in the left eye. CV2 sustained a small cut above his left eyebrow and a lump below his left eye.

At least two of the males pointed a gun at CV3.

At approximately 9:17 p.m., Fresno County Sheriff's deputies responded to a call from one of the CVs. The deputies found minor and five other Hispanic males at a campsite in the park. The deputies located a single firearm at the campsite. CV1, CV2, and CV3 identified minor, C.G., and D.M.

---

**4**     Minor admitted, pursuant to *People v. West* (1970) 3 Cal.3d 595, that if the trial court reviewed the police reports it would find a factual basis for count 1. Our factual summary is therefore drawn from the probation officer's summary of the police reports.

Minor was interviewed on September 11.  He acknowledged that he was under the influence of alcohol, marijuana, and cocaine during the offense.  Minor stated that he did not remember what had occurred during the offense.

## DISCUSSION

### A.  DJJ Placement

Minor contends the juvenile court abused its discretion in committing him to the DJJ because suitable less restrictive alternatives were available.  Specifically, minor contends he should have been committed to a drug rehabilitation program or some "other less restrictive program[] designed to address any remaining criminal street gang affiliation concerns."  The People disagree, as do we.

#### 1.  Additional Background

At the October 7 disposition hearing, minor presented an alternative account of the facts of the offense.[5]  Minor contended that he was at a family gathering with small children present when a vehicle drove past at low speed and shined a laser at their campsite.  Minor and two friends followed the vehicle because they believed that the occupants may have pointed firearms at them, and they were concerned about the safety of the children at the campsite.  The probation officer noted that minor's account of the offense was inconsistent with the facts alleged in the police reports.

After hearing the parties' arguments, the juvenile court noted that it had heard the parties' arguments regarding the facts of the case but concluded that minor had engaged in serious conduct that posed "a big danger to the public."  The court then summarized the reasons for its conclusions that less restrictive alternative placements were not suitable and that DJJ placement would benefit minor.  First, in 2018, minor pointed a handgun at a victim's face and said " 'Get the F out of here or you're going to be shot.' "

---

[5]    Minor's counsel also presented a similar account in a sentencing memorandum provided to the court.

4.

Instead of committing minor to the DJJ in that instance, minor was committed to the New Horizons program. The court noted that the New Horizons program was the longest available local program and was the "most extensive in terms of services provided." In that program, minor did "[six] weeks of quitting marijuana, 82 hours of alcohol and drug education, 11 hours of family therapy, 29 hours of family awareness group, 320 hours of group therapy, 41 weeks of individual therapy, … and 24 hours of anger management." Shortly after he was released from that program, minor committed the present offense. The court therefore concluded that minor had already received extensive substance abuse counseling and programming, so placement in a six-month substance abuse unit treatment program or re-placement in the New Horizons program would not be appropriate placements.

Second, the juvenile court reviewed the reformatory and treatment programs available at the DJJ. It explained that minor had admitted being under the influence of multiple substances on the date of the present offense. It further noted that minor needed interventions for his gang involvement and traumas. It found that the "DJJ ha[d] a great substance abuse treatment program[,] … [and] a number of programs that address[ed] [minor's] gang and trauma [issues][,]" including a cognitive behavioral intervention for substance abuse, a 10-week aggression interruption training, and the Counterpoint program.[6] The court also noted that minor had obtained a high school diploma and minor had expressed interest in learning career training, specifically a welding program. The DJJ career technical education program offered an opportunity to receive career technical

---

[6] The probation officer's report, which the juvenile court examined, explained that the Counterpoint program is a 33-session cognitive behavioral program for male offenders designed to reduce reoffending behavior, and also specifically identified the trauma-focused cognitive behavioral treatment program as a program that would benefit minor.

education.  For those reasons, the court concluded that there was substantial evidence that minor would benefit from DJJ placement.

2.  Analysis

We review a juvenile court's commitment decision for abuse of discretion.  (*In re A.R.* (2018) 24 Cal.App.5th 1076, 1080 (*A.R.*).)  In reviewing a decision for abuse of discretion, we make all reasonable inferences in support of the trial court's determination.  (*Ibid.*)  " 'A DJJ commitment is not an abuse of discretion where the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate.' " (*Ibid.*)

" 'Although the DJJ is normally a placement of last resort, there is no absolute rule that a DJJ commitment cannot be ordered unless less restrictive placements have been attempted.' " (*A.R.*, *supra*, 24 Cal.App.5th at pp. 1080–1081; accord, *In re Eddie M.* (2003) 31 Cal.4th 480, 507; *In re Carlos J.* (2018) 22 Cal.App.5th 1, 6 ["A juvenile court may properly consider 'a restrictive commitment as a means of protecting the public safety.' "].)  "A juvenile court must determine if the record supports a finding that it is *probable* the minor will benefit from being committed to DJJ." (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 486.)  There is no requirement that the court expressly find exactly *how* a minor will benefit from the commitment.  (*Ibid.*)  Nor must the juvenile court expressly state on the record its reasons for rejecting less restrictive placements.  (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1159.)  But the record must contain some evidence that the court concluded DJJ placement would benefit the minor and appropriately considered and rejected reasonable alternative placements.  (*A.R.*, *supra*, 24 Cal.App.5th at pp. 1080–1081; *Nicole H.*, *supra*, 244 Cal.App.4th at p. 1159; *Jonathan T.*, *supra*, 166 Cal.App.4th at p. 486.)

In reviewing a commitment determination, we remember that "the primary goal behind maintaining separate courts and procedures for adults and minors is to ensure that juvenile offenders who have not yet become hardened criminals receive treatment and

rehabilitation." (*In re Carlos E.* (2005) 127 Cal.App.4th 1529, 1542.) That goal is reflected in the mandate that juvenile courts consider "the protection of the public as well as the rehabilitation of the minor" in reaching a disposition. (*Ibid.*) The court is required to "consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford him adequate care." (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.)

Here, the juvenile court considered minor's previous placement and his serious reoffending behavior soon after being released from that placement. It considered that minor's previous placement had been the longest local placement and that it had involved extensive programming and drug treatment. On that record, the court concluded that non-DJJ placement options would not be appropriate to meet minor's needs.

Next, the juvenile court considered the programs available to minor at the DJJ, including a drug treatment program, cognitive behavioral programs designed to reduce offending behavior, and educational programs. The court found that, based on minor's needs, those programs would benefit him.

In short, the record contains evidence that less restrictive alternative placements were considered and reasonably rejected, and that minor would benefit from DJJ placement. We find no abuse of discretion.

Minor contends that the juvenile court's conclusion failed to adequately consider minor's account of the offense. Specifically, he contends that the trial court should have considered that he acted "as a defender of others, and not as an unprovoked aggressor." The trial court expressly noted that it had considered minor's version of the offense. Nevertheless, it concluded that minor had engaged in a serious offense that posed a serious risk to the public. The trial court gave adequate consideration to minor's argument and version of the events. We find no merit to minor's conclusion that the trial court erred in not giving sufficient weight to his account of the offense.

## <u>DISPOSITION</u>

The order is affirmed.