Filed 2/16/16

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re NICOLE H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>NICOLE H.,<br><br>     Defendant and Appellant. | A143734<br><br>(Contra Costa County<br>Super. Ct. No. J14-00522) |

     Nicole H. admitted an allegation that she committed an assault by force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)). On appeal, she contends the juvenile court erred in placing her at a California facility far from her father's home, in imposing an electronics search probation condition, and in failing to designate a maximum time of confinement. In the published portion of this opinion we uphold the decision to remove appellant from her home, but conclude no substantial evidence justified the court's distant placement of her. We reverse and remand with instructions that the court reconsider that placement. In the unpublished portion we remand for the trial court to modify the search condition and specify the maximum time of confinement.

PROCEDURAL BACKGROUND

     In May 2014, the Contra Costa County District Attorney's Office filed a juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a))[1] alleging that appellant

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III.

committed an assault by force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)). In September, appellant admitted the allegation.

In October 2014, following a contested dispositional hearing, the juvenile court adjudged appellant a ward of the court and ordered that she be removed from her father's custody and detained in juvenile hall pending placement. The court's oral and written orders suggested that the probation office consider two placements, Environmental Alternatives and the Children's Home of Stockton. The court also imposed a number of probation conditions, including a condition permitting searches of appellant's cell phone and other electronic devices. In November, appellant was placed at the Warner Mountains Group Home. This appeal followed.

On our own motion, we take judicial notice of the facts that (1) Environmental Alternatives is in the city of Tracy; (2) the Children's Home of Stockton is in the city of Stockton; (3) both cities are in San Joaquin County, which is the County directly East of Contra Costa County; (4) the distance between Stockton and appellant's father's home in Oakley is approximately 40 miles; and (5) the distance between Tracy and Oakley is approximately 30 miles. (Evid. Code, § 452, subd. (h); *People v. Posey* (2004) 32 Cal.4th 193, 215, fn. 9 (*Posey*).) In addition, on our own motion, we take judicial notice of the facts that (1) the Warner Mountains Group Home is in Canby, California; (2) Canby is in Modoc County, just south of the Oregon border; and (3) the distance between the group home in Canby and appellant's father's home in Oakley is approximately 340 miles. (Evid. Code, § 452, subd. (h); *Posey*, *supra*, 32 Cal.4th at p. 215, fn. 9.)

FACTUAL BACKGROUND[2]

On the afternoon of January 22, 2014, appellant arranged for a friend to lure the victim, E.Y., to Heron Park in Brentwood. Appellant and the victim were having a conflict due to a statement made by E.Y. that appellant perceived as a threat, and due to rumors E.Y. had spread about appellant. A school official obtained from an anonymous student a video depicting the events at the park on January 22; the video had been

_____

[1] All undesignated statutory references are to the Welfare and Institutions Code.
[2] This factual summary is based on the probation officer's report to the juvenile court.

2

uploaded to a smartphone messaging application and had circulated at school. The video showed an attack on E.Y. by four females, including appellant. One grabbed E.Y. by the hair, struck her repeatedly, and slammed her head on the ground several times. Appellant hit E.Y. more than 11 times, then kneeled on E.Y., who was on the ground. Appellant then "wildly" struck at E.Y. and then kicked the victim. The third and fourth assailants also repeatedly struck E.Y. before the group left.

Appellant admitted her involvement but blamed others for arranging the assault. She said she gave her phone to another individual to record the fight.

## DISCUSSION

I. *The Juvenile Court's Placement Decision Was An Abuse of Discretion*

Appellant contends the juvenile court erred in placing her at an in-state, out-of-home placement many hours away from her father's home. We review the court's placement decision for an abuse of discretion. (*In re Antoine D.* (2006) 137 Cal.App.4th 1314, 1320.) We review the court's findings for substantial evidence, and " '[a] trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence.' " (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288 (*Khalid B.*).) " ' " 'In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law.' " ' " (*Ibid.*)

"The purpose of the juvenile court law is 'to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public. If removal of a minor is determined by the juvenile court to be necessary, reunification of the minor with his or her family shall be a primary objective. If the minor is removed from his or her own family, it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents.' (§ 202, subd. (a).) 'Minors under the juvenile court's jurisdiction must receive the care, treatment, and

3

guidance consistent with their best interest and the best interest of the public. (§ 202, subd. (b).) Additionally, minors who have committed crimes must receive the care, treatment, and guidance that holds them accountable for their behavior, is appropriate for their circumstances, and conforms with the interest of public safety and protection. (*Ibid.*) This guidance may include punishment that is consistent with the rehabilitative objectives. (*Ibid.*)' " (*In re Khalid B.*, *supra*, 233 Cal.App.4th at p. 1288.)

At the dispositional hearing, appellant objected to an out-of-home placement. She argued this was her first arrest, and referred the court to October 2014 letters from teachers and administrators at her high school stating that her behavior and academic performance had been excellent.[3] Appellant's father testified regarding the discipline he imposed after the assault and appellant's good behavior since the incident.

Using an assessment tool, the probation department determined that appellant was at low risk for re-offense. Nevertheless, the department recommended an out-of-home placement based on the nature of the offense, appellant's lack of remorse, and her need for intensive counseling in a "structured and therapeutic environment." In removing appellant from her father's custody, the juvenile court emphasized appellant's role in the "brutal" and "outrageous" assault on the victim. The court also emphasized that appellant denied feeling remorse and showed no emotion when probation showed her the video of the assault. The court stated, "And the fact that [appellant] had no look on her face while watching [the video], I don't understand. And it does show a complete void; something has happened along the way to cut off that ability to empathize, to feel remorse, to be ashamed. [¶] I really think, [appellant], that there is something that needs to be addressed." The court also said it believed appellant's lack of empathy meant she posed a danger to others.

Appellant first argues the evidence does not support the juvenile court's finding that her welfare required that custody be taken from her father. (§ 726, subd. (a)(3).) We disagree. The juvenile court could reasonably infer from the nature of the attack and

_____

[3] Following appellant's arrest, she spent three days in juvenile hall before being released to her father.

4

appellant's lack of remorse that she was a danger to the community and required treatment in a structured setting. The juvenile court did not abuse its discretion in removing appellant from her father's home.

On the other hand, nothing in the record supported placing appellant at an institution many hours away from her home. "Although public safety and the rehabilitation of the minor (presumed to serve the best interests of the delinquent minor) are the preeminent goals of the juvenile law relating to delinquent minors, it is also true that family reunification and the reintegration of the minor into his family are statutorily recognized to be important and complementary goals." (*In re James R.* (2007) 153 Cal.App.4th 413, 434.) Thus, while section 727, subdivision (a), authorizes a juvenile court that adjudges a minor a ward of the court under section 602 to "make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor . . . ," section 727.1 specifies various criteria the court must consider in making an out-of-home placement, including proximity of the placement to the minor's parent's home. In particular, former section 727.1, in effect at the time of appellant's placement, provides, "[w]hen the court orders the care, custody, and control of the minor to be under the supervision of the probation officer for foster care placement pursuant to subdivision (a) of Section 727, the decision regarding choice of placement . . . shall be based upon selection of a safe setting that is the least restrictive or most family like, and the most appropriate setting that meets the individual needs of the minor and is available *and in close proximity to the parent's home*,[4] consistent with the selection of the environment best suited to meet the minor's special needs and best interests."[5] (Italics added; see also *James R.,* at p. 432 [section 727.1 "illustrates the importance of the

---

[4] Section 727.1 was amended effective January 1, 2016 (Stats. 2015, ch. 773, § 51, pp. 5845–5846.), and the section now refers to "proximity" rather than "close proximity." Section 706.6, which specifies information to be included in a case plan, was also amended, but continues to refer to "closest proximity." (See fn. 8, *post*.)

[5] The group home placement at issue in the present case is a foster care placement. Section 727.4, subdivision (d)(1) states, " 'Foster care' means residential care provided in any of the settings described in Section 11402." Section 11402 describes group home settings.

5

family connection in the care and rehabilitation of the minor"].)  Furthermore, former section 706.6, which specifies information to be included in a case plan when foster care is recommended (see § 706.5), provides, "[a]n appropriate placement is a placement in the least restrictive, most family-like environment *in closest proximity to the minor's home*, that meets the minor's best interests and special needs."[6]  (Former section 706.6, subd. (c)(3)(B), italics added.)  Thus, at the time of appellant's placement, and currently, sections 727.1 and 706.6 expressly require the juvenile court to consider the nearness of the placement to the minor's home, in order to achieve the goals of family reunification and rehabilitation.  Nevertheless, a minor's special needs and best interests may justify a distant placement.

The record is devoid of any evidence or reasoning supporting a group home placement far from appellant's father's home.  At an October 28, 2014 dispositional hearing before Judge Rebecca Hardie, the juvenile court rejected appellant's plea to be placed on probation in her father's home and recommended that the probation department consider "Environmental Alternatives" and "Children's Home of Stockton" as "potential placement[s]" for appellant.  In an attempt to reassure appellant and her family, the court stated, "And I want everyone to understand that placement is a place to get really intensive therapy, not only for you, Nicole, but for the family.  And they encourage the family to participate.  You earn weekend passes home."  At a review hearing on November 13, again before Judge Hardie, the court noted, "I see that a referral has been sent to Environmental Alternatives as well as Children's Home of Stockton and that

---

[6] Section 706.6 has been substantially amended, effective January 1, 2016, to include additional directives for case plans and placement decisions.  (Stats. 2015, ch. 773, § 49.5, pp. 5840–5843.)  The quoted language has only been amended to provide that an appropriate placement is also one that "promotes normal childhood experiences." (§ 706.6, subd. (c)(3)(B).)

probation is awaiting response." The referral notice also stated a referral had been sent to Warner Mountain Group Home, but the juvenile court did not reference that referral.[7]

On November 20, 2014, appellant was placed at and transported to Warner Mountain Group Home. A review hearing took place on November 26, but this time before Judge Lois Haight. The juvenile court noted appellant had been transported to Warner Mountain,[8] commenting that it was a "terrific" placement and "I did an unannounced visit up there, and, let me tell you, if you are going to do an unannounced visit to a place that's seven or eight hours away, you stay a long time." Appellant's counsel noted the placement was "a little bit of a change of circumstance for my client's father," in light of the juvenile court's prior directive that he have counseling with appellant on a weekly basis. Counsel requested that the court modify that order to specify monthly counseling or phone counseling "to accommodate the distance now." Judge Haight responded, "You know, I was not the judge that did this. I feel uncomfortable modifying another judge's orders." Nevertheless, the court authorized monthly telephonic counseling. Judge Haight also asked whether Judge Hardie was aware Warner Mountain was under consideration. Counsel stated they had actually been anticipating a placement in Stockton. Judge Haight acknowledged that, and indicated she would let Judge Hardie know she had modified the counseling requirement.

As is evident from the above description of the proceedings, Judge Hardie seemed to anticipate a placement in Stockton or Tracy, and certainly made no express finding that a remote placement in Canby met "the minor's special needs and best interests." (§ 727.1.) Neither did Judge Haight make any such determination; that is, she was not asked to and did not consider the appropriateness of appellant's placement in light of the evidence in the record. Furthermore, the probation officer's report and recommendation prepared for the October 2014 dispositional hearing made a strong case for out-of-home

---

[7] We do not understand appellant to argue that Judge Hardie failed to consider the Warner Mountain placement. The probation department's referral notice informed Judge Hardie that Warner Mountain was one of the placements under consideration.
[8] The reporter's transcript states "Wonder Mountain."

7

placement, but did not provide any reasons why a placement at Warner Mountain Group Home would be in appellant's best interests. According to the report, "Wardship with out-of-home placement is the appropriate response to the issues the minor and her family present. . . . The minor appears to be affected by her mother,[9] and Nicole will need ongoing therapy in order to address the hardships she dealt with when she was residing with her mother. The minor's father seems to be an appropriate parental figure and certainly has made efforts to obtain services for his daughter. Nonetheless, the minor would benefit from a structured and therapeutic environment such as out-of-home placement to fully identify and address her underlying issues, cognitive distortions, the stressors in her life, her relationship with her mother, and her use of violence to resolve conflict. In a residential placement setting, the minor will attend school regularly, and receive proper guidance and intensive therapy."

On appeal, the People argue the placement was beneficial because it took appellant away from "negative influences."[10] However, there is no evidence in the record supporting that assertion. There is no evidence that appellant was being subjected to ongoing negative influences at home, and, even if there were such evidence, there is no indication the probation department or the juvenile court believed a placement further away than Stockton or Tracy was necessary to remove appellant from whatever negative influences existed in Oakley.[11] Instead, the juvenile court and the probation officer's

---

[9] Appellant's mother's whereabouts were unknown and she appeared to have a substance abuse problem.

[10] The People do not contend that appellant forfeited her claim on appeal because her counsel failed to object to the Warner Mountain placement at the hearing before Judge Haight. In any event, because the claim involves an important issue of law, we exercise our discretion to consider the issue. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7.)

[11] The record shows that it was psychologically harmful for appellant to be in her mother's custody, but appellant has not been in her mother's custody since before the assault. The only other reference to negative influences is the following statement in the probation officer's report: "[Appellant's father] has acknowledged that the minor's friends are not a good influence upon her and he would not allow his daughter to socialize with them anymore." Unsurprisingly, the juvenile court directed appellant to stay away from the other participants in the assault as a condition of probation.

report agreed on the importance of fostering the relationship between appellant and her father, which the Warner Mountain placement made considerably more difficult. Indeed, Judge Hardie sought to support appellant's relationship with her father by directing the father to engage in weekly therapy with appellant, but that order became effectively impossible to implement when appellant was sent to Canby. Accordingly, the People have not shown that any evidence in the present record supported a determination the Warner Mountain placement was in appellant's best interests.

Case law addressing the placement of juveniles at the California Division of Juvenile Justice (DJJ, formerly the California Youth Authority) is instructive. "[T]he statutory scheme contemplates a progressively more restrictive and punitive series of dispositions starting with home placement under supervision, and progressing to foster home placement, placement in a local treatment facility, and finally placement at the DJJ" or Youth Authority. (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250.) Nevertheless, there is no rule that such a placement cannot be ordered unless less restrictive placements have been attempted, and there is no requirement that the juvenile court expressly state on the record the reasons for rejecting less restrictive placements. (*Ibid.*; *In re Teofilio A.* (1989) 210 Cal.App.3d 571, 577 (*Teofilio A.*); see also *In re Ricky H.* (1981) 30 Cal.3d 176, 184 [although juvenile court failed to articulate reasons for Youth Authority commitment, evidence in the record showed that "the purposes of the Juvenile Court Law could not be accomplished by" a less restrictive placement].) Rather, "if there is evidence in the record to show a consideration of less restrictive placements was before the court, the fact the judge does not state on the record his consideration of those alternatives and reasons for rejecting them will not result in a reversal." (*Teofilio A.*, at p. 577.) On the other hand, "there must be some evidence to support the judge's implied determination that he sub silentio considered and rejected reasonable alternative dispositions." (*Ibid.*; accord *In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.)[12] In

---

[12] In *Teofilio A.*, the record was "barren on this crucial issue" because the only evidence before the court was the probation officer's report, but the report failed "to show the probation officer considered less restrictive alternatives or why such alternatives would

the present case, as noted previously (footnote 9, *ante*), there is some basis to conclude Judge Hardie considered the Warner Mountain placement, because the probation department informed her of its referral. However, any implied finding that the placement was in appellant's best interests is not supported by substantial evidence in the record.

In summary, appellant was placed at Warner Mountain Group Home without any evidence in the record that the placement was in her best interests despite the lack of proximity to her father's home. This was contrary to former and current sections 727.1 and 706.6, and requires that this court reverse and remand for reconsideration of the placement in light of the statutory directives.[13]

II.    *The Electronic Search Condition Must Be Modified*

At the dispositional hearing, the juvenile court imposed the following probation condition: "You will have to submit your person, any personal property, which includes any cell phone or other electronic device in your possession, as well as any vehicle under your control and residence to search and seizure by any peace officer at any time of day or night with or without a warrant." Appellant claims the electronics search condition is unconstitutionally vague and overbroad. We uphold the condition, but remand for it to be modified in certain respects.

"Under . . . section 730, subdivision (b), a juvenile court may impose 'any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' In spite of the juvenile court's broad discretion, '[a] probation condition "must be sufficiently precise for the probationer to know what is required of him, and for the court to determine

---

be ineffective or inappropriate." (*Teofilio A.*, *supra*, 210 Cal.App.3d at p. 577.) In fact, the record indicated the minor was not a "suitable candidate" for the Youth Authority; the Court of Appeal reversed, concluding "appropriate standards for commitment to the [Youth Authority] were not applied in this case." (*Id.* at pp. 577, 579.)

[13] The record does not indicate why appellant was not placed at Environmental Alternatives or the Children's Home of Stockton. Our decision does not preclude the juvenile court from placing appellant at Warner Mountain Group Home on remand if the record demonstrates the placement is in appellant's best interests under the appropriate statutory criteria.

whether the condition has been violated," if it is to withstand a challenge on the ground of vagueness. [Citation.] A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad.' [Citation.] A defendant may contend for the first time on appeal that a probation condition is unconstitutionally vague or overbroad on its face when the challenge presents a pure question of law that the appellate court can resolve without reference to the sentencing record." (*In re Kevin F.* (2015) 239 Cal.App.4th 351, 357.)

At the outset, we reject appellant's vagueness challenge because she fails to articulate why the search condition is insufficiently precise for her to know what is required of her and for the juvenile court to determine whether the condition has been violated. (*In re Kevin F.*, *supra*, 239 Cal.App.4th at p. 357.) Her claims that the term "electronic device" can be read to encompass a wide range of devices and that the search condition can be read to permit searches of password protected accounts are more properly considered as claims of overbreadth than as claims of unconstitutional vagueness. (See *In re Ricardo P.* (2015) 241 Cal.App.4th 676, 689 (*Ricardo P.*).)

Turning to appellant's overbreadth claim, "[a]lthough a probation condition imposed on a juvenile must be narrowly tailored to both the condition's purposes and the individual's needs, ' " ' "a condition . . . that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court." ' " ' [Citations.] 'This is because juveniles are deemed to be more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed. The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents. And a parent may "curtail a child's exercise of . . . constitutional rights . . . [because a] parent's own constitutionally protected 'liberty' includes the right to 'bring up children' [citation] and to 'direct the upbringing and education of children.' " ' " (*Ricardo P.*, *supra*, 241 Cal.App.4th at p. 688; see also *In re Patrick F.* (2015) 242 Cal.App.4th 104, 111-112 (*Patrick F.*).)

Contrary to the People's argument to the contrary, the electronics condition implicates appellant's "constitutional rights to privacy and expression." (*Ricardo P.*, *supra*, 241 Cal.App.4th at p. 689.) Appellant's "privacy interest in the information contained on [her] electronic devices . . . is trumped by the state's interest in effectively monitoring [her] probation . . . only to the extent the information is reasonably likely to yield evidence of . . . criminal activity or noncompliance with probation conditions." (*Patrick F.*, *supra*, 242 Cal.App.4th at p. 113.)

*Ricardo P.* and *Patrick F.* held that electronics search conditions similar to that in the present case were overbroad. (*Ricardo P.*, *supra*, 241 Cal.App.4th at p. 689; *Patrick F.*, *supra*, 242 Cal.App.4th at p. 113.) In *Ricardo P.*, "[t]he juvenile court's stated purpose in imposing the condition was to permit monitoring of [the minor's] involvement with illegal drugs, particularly marijuana. But the condition . . . does not limit the types of data on or accessible through his cell phone that may be searched in light of this purpose. 'Mobile application software on a cell phone, or "apps," offer a range of tools for managing detailed information about all aspects of a person's life,' including financial, medical, romantic, and political. [Citation.] The information that might be contained in [minor's] electronic accounts is similarly broad. The condition therefore permits review of all sorts of private information that is highly unlikely to shed any light on whether [minor] is complying with the other conditions of his probation, drug-related or otherwise. As a result, we conclude that it is not narrowly tailored to accomplish [minor's] rehabilitation." (*Ricardo P.*, at pp. 689–690; see also *Patrick F.* at p. 113.)

*Ricardo P.* remanded to the juvenile court with instructions that the court consider imposing a condition "permitting searches of a narrower range of electronic information related to the court's supervisory concerns." (*Ricardo P.*, *supra*, 241 Cal.App.4th at p. 692.) *Patrick F.*, on the other hand, directed that the search condition in the case be modified to read, " 'Submit your person and any vehicle, room or property under your control to a search by the probation officer or a peace officer, with or without a search warrant, at any time of the day or night. Submit all electronic devices under your control to a search of any text messages, voicemail messages, call logs, photographs, e-mail

12

accounts and social media accounts, with or without a search warrant, at any time of the day or night, and provide the probation or peace officer with any passwords necessary to access the information specified.' " (*Patrick F.*, *supra*, 242 Cal.App.4th at p. 115.)

Similar reasoning to that in *Ricardo P.* and *Patrick F.* applies in the present case. We agree with the People that the juvenile court reasonably imposed an electronics search condition. First, a properly tailored electronics search condition "allows for monitoring of [appellant's] compliance with [her] other probation conditions in a way that a standard search condition simply cannot." (*Ricardo P.*, *supra*, 241 Cal.App.4th at p. 690.) Second, because appellant gave her cell phone to another individual to record the assault, and because a video of the assault was subsequently uploaded to a smartphone messaging application, there is a particularized need to monitor appellant's cell phone use.[14] Nonetheless, accomplishing those objectives would not, for example, require accessing applications that contain only sensitive financial or medical information. We will direct that the juvenile court modify its search condition on remand; the court should consider using similar language to that adopted in *Patrick F.*[15]

III.    *The Maximum Time of Confinement Must Be Specified*

The parties agree the juvenile court's dispositional order should be modified to specify the maximum time of confinement of four years and the remaining maximum time in custody of three years, 11 months, and 27 days. (See § 726, subd. (d).) We will direct the juvenile court to modify the order.

DISPOSITION

The juvenile court's dispositional order is reversed. The matter is remanded with directions that the juvenile court reconsider appellant's placement, taking into

---

[14] In light of the clear nexus between appellant's cellphone use and the assault, we reject appellant's contention that the electronics search condition was invalid under *People v. Lent* (1975) 15 Cal.3d 481. (See also *Patrick F.*, *supra*, 242 Cal.App.4th at pp. 110–111.)
[15] A modified search condition along the lines of that adopted in *Patrick F.*, *supra*, 242 Cal.App.4th at p. 115, which specifies the information subject to search, would address appellant's concern about searches of electronic devices not likely to contain relevant information.

13

consideration the statutory preference for a placement proximate to her father's home; modify the electronics search probation condition consistent with this decision; and specify the maximum time in confinement and the maximum remaining time in confinement.

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BRUINIERS, J.

(A143734)

15

Superior Court of Contra Costa County, No. J14-00522, Hon., Rebecca C. Hardie Judge.

Leila H. Moncharsh, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffery M. Laurence, Senior Assistant Attorney General, Donna M. Provenzano and Huy T. Luong, Deputy Attorneys General, for Plaintiff and Respondent.