Filed 12/1/22  In re D.J. CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re D.J., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>D.J.,<br><br>        Defendant and Appellant. | A164486<br><br>(Contra Costa County<br>Super. Ct. No. J2100426) |

D.J. (Minor) appeals from a disposition order adjudging him an indefinite ward of the court and committing him to the secure youth treatment facility at Briones Youth Academy (BYA) after he pled no contest to attempted voluntary manslaughter with firearm and great bodily injury enhancements.  Minor contends the juvenile court's order was an abuse of discretion because the evidence did not sufficiently show that his mental health needs would be addressed at BYA.  He also contends the evidence did not support the court's finding that a less restrictive alternative would have been inappropriate.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Briefly, the facts underlying the offense are as follows.  A restaurant employee witnessed the shooting of her brother in the restaurant parking lot

during an apparent argument. The police found four spent bullet casings in the parking lot.

After the shooting, Minor called his mother and told her he shot someone. Minor's mother retrieved him and subsequently flagged down a police officer at which point Minor turned himself and his firearm (a ghost gun) in. Minor, who was 17 years old, told the police that he shot the victim. The victim—who was then 35 years old—had been shot once in the neck and was thereby rendered a quadriplegic with major brain trauma.

The People filed a wardship petition pursuant to Welfare and Institutions Code section 602, subdivision (a),[1] charging Minor with one count of attempted murder. (Pen. Code, §§ 664/187.) Minor pled no contest to an amended count of attempted voluntary manslaughter (*id.*, §§ 664/192), and he admitted firearm and great bodily injury enhancements (*id.*, §§ 12022.5 & 12022.7, subd. (b)). At his change of plea hearing, the court confirmed Minor's understanding that he could be confined in a locked facility for a maximum period of 12 years. Minor further affirmed his understanding that the charged offense was an offense enumerated in section 707, subdivision (b), and that he could potentially be committed to the "most restrictive facility . . . at the local county level," which would be Secure Track at BYA.[2]

In advance of the disposition hearing, a probation report was prepared that detailed the circumstances of the offense. The probation report also expressed great concern about Minor's mental health, noting circumstances

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    This is sometimes referred to in the record as "Secure Pathway." We will generally refer to this as "Secure Track," consistent with the parties' briefs.

regarding Minor's family, Minor's mental and emotional state, and various psychological diagnoses rendered after his detention.[3] Among other things, the report indicated Minor recently lost his uncle, a father figure, to suicide. Minor self-reported his struggles with various mental health issues. The report indicated Minor needed to address his mental health issues to rehabilitate.

The probation report also expressed concern regarding Minor's prior history of possessing a weapon. About two school years prior, Minor had been put on a year of informal probation for bringing a BB-gun to school. Minor participated in counseling and community service while on probation. Although Minor successfully completed his probation, he went on to commit the instant offense.

The probation report noted Minor was assessed using the "Ohio Youth Assessment System" (OYAS) in order to identify his "underlying motivation for delinquent behavior" and to target his specific needs. OYAS indicated low concern based on Minor's peer and social support network, and values, beliefs and attitudes. But there was moderate concern based on his juvenile justice history; family and living arrangements; education and employment; pro-social skills; and substance abuse, mental health, and personality. Overall, under OYAS, Minor was deemed a low risk of re-offense.

The probation report recommended that the juvenile court adjudge Minor an indefinite ward and commit him to Secure Track at BYA. The report noted probation manager Malkia Crowder screened Minor and found him eligible and suitable for Secure Track. In order to rehabilitate, Minor would need to address his poor decision-making skills and mental health

---

[3]     To maintain confidentiality, we refrain from providing details in text concerning Dr. Andrew Pojman's diagnoses of Minor's mental health issues.

issues, and continue his education. Minor also needed structure and close supervision in a safe and secure environment while participating in treatment. At BYA, a multidisciplinary team would create an individualized treatment plan for Minor, which could include programs like "Thinking for a Change, Anger Replacement Training, Victim Empathy, Advanced Practice, Free Your Mind, and Interactive Journaling." BYA would also offer Minor the opportunity to receive life skills, vocational training, and further education,[4] in line with its "holistic approach to create a rehabilitative environment through collaboration with the community, family, mental/behavioral health, and education, while offering the minor life skills designed to promote vocational and educational success beyond the term of commitment." The report detailed Secure Track's various "levels" of treatment and noted that the court would receive updates of Minor's progress on Secure Track based on evaluations undertaken every six months.

At the disposition hearing, the juvenile court received a psychological evaluation by Dr. Pojman, and letters from Minor, his mother, and others. The sister of the victim made a statement discussing the impact of the offense and the fact that the victim's wife gave birth to a newborn child after the shooting.

Minor's counsel objected to probation's recommendation that Minor be committed to Secure Track at BYA and asked that the court instead commit him to BYA's Commitment Track.[5] Minor's counsel argued that Minor did not meet the criteria for commitment to Secure Track under section 875,

---

[4]     With regard to his education, the report indicated Minor had poor attendance and grades, and was far behind on credits he needed to graduate from high school.

[5]     This is also referred to in the record as "Commitment Pathway." We will refer to this as "Commitment Track," consistent with the parties' briefs.

4

subdivision (a)(3). And pointing to Minor's mental health issues and asserting they caused the offense, counsel argued that Commitment Track, rather than Secure Track, would afford Minor the mental health treatment he needs.

The juvenile court asked probation officer Edward Schuck to address why various less restrictive settings would not be appropriate. Schuck asserted generally that in cases involving the most serious violent crimes, especially when a firearm is used, youths are not screened for placement in a non-secure setting like a ranch or a short-term residential therapeutic program, which would be open to the public and where youths could simply leave at any time. Schuck further noted psychotropic medication cannot be provided at a ranch, though he was unsure if Minor was taking medication that would be disallowed. Schuck then explained that one commitment packet is sent to BYA and screened to determine whether Commitment Track or Secure Track is most appropriate. Schuck explained that the difference between these tracks is "the dosage of treatment" and that Commitment Track is "designed to provide approximately 200 hours of cognitive based therapy." Because "[a] lot of research has shown that for some of our most serious offenders the minimum amount of cognitive behavior treatment that has a significant impact is going to be approximately 300 hours," Schuck advised that Commitment Track is not usually the most appropriate placement for someone who has committed a very serious offense and needs a significant amount of treatment.

Probation manager Crowder testified that Commitment Track and Secure Track are the only secure setting placements available in the county (both are in juvenile hall). Commitment Track is a 10-and-a-half month program, where youths receive individualized case and rehabilitation plans

5

that are based on their needs and include "evidence-based programming and life skills and things that have been determined to be needed for the individual." Secure Track's timeline is based on the recommendation of the court, and youths in Secure Track receive an individualized rehabilitation plan with more programming than those in Commitment Track. For example, "Free Your Mind"—which is only available in Secure Track—is a 30-session program for individuals considered high risk that teaches positive thinking and models behaviors such as emotional regulation, victim awareness, and mental toughness. Crowder also explained that Interactive Journaling is a program in which youths maintain individual journals and write about specific lessons, and in Commitment Track there are six journals whereas there are nine in Secure Track.

Crowder affirmed that youths in Secure Track have access to mental health and psychological services throughout their commitment. Mental health services at BYA include assigning every youth to a "behavioral health specialist"—which is BYA's term for a "mental health therapist"—who they meet with once a week. BYA also is developing a "home component" where youths will receive family therapy toward the end of their commitment.

The prosecutor argued that Minor needed the extra treatment offered by Secure Track, and that Secure Track was the most appropriate setting for Minor. Probation officer Schuck noted that, with good behavior, Minor's term of commitment in Secure Track could be adjusted.[6] Minor's counsel asked that Minor be placed in Commitment Track at BYA, arguing he could be rehabilitated there.

---

[6] Presumably, Schuck was referring to the flexibility of commitments to a secure youth treatment facility under section 875.

Ultimately, the juvenile court adjudged Minor an indefinite ward and committed Minor to BYA's Secure Track with a baseline term of two years and a maximum term of 12 years or up to the age of 25, whichever occurs first. The court found that this commitment would address the goals of rehabilitation and community safety, and that a less restrictive alternative than BYA's Secure Track would be unsuitable for Minor. In making this finding, the court noted the severity of the offense, including consequences to the victim and his family; Minor's minimal prior history, including his prior term of probation; his age; his mental and emotional health; and his "other special needs." While acknowledging that BYA's Secure Track and Commitment Track are similar, the court observed that Commitment Track would provide Minor with less "dosage" in terms of programming. The court further noted that Secure Track could address Minor's various distinct treatment needs, including his mental health and emotional regulation needs.

## DISCUSSION

Minor contends the juvenile court abused its discretion in ordering him committed to the secure youth treatment facility at BYA's Secure Track. He argues first that the evidence wholly failed to show that BYA could adequately and appropriately address his significant mental health needs. Next, he argues the evidence failed to establish that a less restrictive placement was unsuitable.

### A. Legal Principles and Standard of Review

In determining the appropriate disposition in a section 602 case, "the court shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history."

7

(§ 725.5.)  Courts should also consider "the safety and protection of the public, the importance of redressing injuries to victims, and the best interests of the minor in all deliberations."  (§ 202, subd. (d).)  Further, courts must "consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford [the minor] adequate care."  (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.)

If a minor is adjudged a ward under section 602, "the court may make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor."  (§ 727, subd. (a)(1).)  Courts have the discretion to place such wards on probation or to order commitment to a juvenile home, ranch, camp, or forestry camp.  (§§ 727, subd. (a)(2)–(3), 730, subd. (a).)  Additionally, a court may order commitment to a secure youth treatment facility if the ward meets all of the following criteria:  "(1) The juvenile is adjudicated and found to be a ward of the court based on an offense listed in subdivision (b) of Section 707 that was committed when the juvenile was 14 years of age or older.  [¶] (2) The adjudication described in paragraph (1) is the most recent offense for which the juvenile has been adjudicated.  [¶] (3) The court has made a finding on the record that a less restrictive, alternative disposition for the ward is unsuitable."  (§ 875, subd. (a)(1)–(3).)

Placement decisions are reviewed for abuse of discretion.  (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1154.)  "We review the court's findings for substantial evidence, and ' "[a] trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." ' [Citation.]  ' " ' "In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law." ' " ' "

8

(*Ibid.*)  The purpose of juvenile court law "is to provide for the protection and safety of the public and each minor . . . and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public."  (§ 202, subd. (a).)  "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances.  This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter."  (*Id.*, subd. (b).)

## B. Analysis

To reiterate, Minor contends the juvenile court abused its discretion in committing him to BYA's Secure Track.  In Minor's view, "no evidence was presented which established that the mental health resources at BYA were appropriate to meet [his] specific mental health treatment needs, as set forth in Dr. Pojman's report."  Instead, he claims, "the probation department stated in its report and at the disposition hearing, only generally, that the Secure Track would provide more 'intensive treatment.' "  We are unpersuaded.

First of all, to the extent Minor complains about his commitment to BYA itself, we observe Minor's counsel specifically asked the court at the disposition hearing to commit Minor to BYA's Commitment Track.  In so doing, Minor forfeited his current appellate challenge to a BYA commitment. (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.)

But even assuming the contention was not forfeited, we would reject it on its merits.  In recommending commitment to BYA's Secure Track, the probation report expressed concern that Minor's untreated mental health

9

issues needed to be addressed to rehabilitate Minor. According to the probation report and the testimony of probation manager Malkia Crowder, BYA would assess Minor's needs and create an individualized rehabilitation plan providing Minor with programming and services, including behavioral programs addressing positive thinking, emotional regulation, and victim awareness, as well as vocational and college courses. If committed to Secure Track, Minor would be assigned a "behavioral health specialist"—i.e., a mental health therapist—to meet with once a week and would have access to mental health and psychological services *throughout his commitment*. Furthermore, Minor would attend a review hearing at six-month intervals, which would provide the court with updates as to Minor's progress. Commitment to Secure Track would also include an opportunity for Minor to be in a transitional unit that would prepare him for successful reintegration into the community. All this evidence amply supported the conclusion that Minor would receive treatment appropriate to meet his specific mental health needs.

Minor's reliance on *In re Carlos J.* (2018) 22 Cal.App.5th 1 (*Carlos J.*), is unavailing. In *Carlos J.*, the probation report recommended a minor's commitment to the Division of Juvenile Facilities (DJF) but failed to document the specific treatment the minor would receive there, and no witnesses testified at the disposition hearing. (*Id.* at pp. 7–9.) Moreover, a psychologist opined the minor needed treatment for PTSD and discouraged a commitment to DJF. (*Id.* at p. 8.) The *Carlos J.* court reversed the juvenile court's order committing the minor to DJF (*id.* at p. 9), finding no substantial evidence of probable benefit from the commitment because the record contained "no specific information in the record regarding the programs at the DJF." (*Id.* at p. 4.) The court indicated that, as part of the initial

showing required to support a DJF commitment, "the probation department, in its report or testimony, [should] identify those programs at the DJF likely to be of benefit to the minor under consideration. Where a minor has particular needs, the probation department should also include *brief* descriptions of the relevant programs to address those needs." (*Id.* at p. 12.)

The *Carlos J.* court was clear, however, that "the probation department is not required in its report and initial testimony to provide indepth information about the DJF's programs or to preemptively respond to even predictable criticisms of the DJF. Under Evidence Code section 664, where the probation officer has identified programs of benefit to a minor and provided brief information about the most important programs, *it may be presumed the probation officer's recommendation is based on an assessment the programs are available and appropriate. If a minor wishes to dispute the availability or efficacy of particular programs, or to suggest that other conditions at the DJF undermine the programs, the minor must present sufficient evidence to reasonably bring into question the benefit he or she will receive* from the adoption of the probation department's recommendation." (*Carlos J.*, *supra*, 22 Cal.App.5th at p. 13, italics added.)

In stark contrast to the situation in *Carlos J.*, here the probation report, the report of Dr. Pojman, and testimony at the disposition hearing identified both Minor's mental health issues and the specific programming and treatment Minor could receive at BYA's Secure Track. Minor presented nothing to dispute the availability or efficacy of the available programming and treatment at BYA. As such, *Carlos J.* is amply distinguishable and provides no basis for overturning the juvenile court's commitment order.

We next turn to Minor's alternative contention that there was no substantial evidence of the unsuitability of a less restrictive alternative than

11

Secure Track. In support of this claim, Minor asserts that the probation report did not state he was unsuitable for Commitment Track and that the record is " 'barren' " as to why Commitment Track[7] or a non-BYA commitment would be unable to address his needs. This, too, is a meritless claim.

In order to commit a minor to a secure treatment facility, a court must make a finding that a less restrictive alternative disposition is unsuitable. (§ 875, subd. (a)(3).) The court must consider all relevant and material evidence, the views of the probation department and counsel, and the following criteria: "(A) The severity of the offense or offenses for which the ward has been most recently adjudicated, including the ward's role in the offense, the ward's behavior, and harm done to victims. [¶] (B) The ward's previous delinquent history, including the adequacy and success of previous attempts by the juvenile court to rehabilitate the ward. [¶] (C) Whether the programming, treatment, and education offered and provided in a secure youth treatment facility is appropriate to meet the treatment and security needs of the ward. [¶] (D) Whether the goals of rehabilitation and community safety can be met by assigning the ward to an alternative, less restrictive disposition that is available to the court. [¶] (E) The ward's age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs affecting

---

[7]    There is nothing in the record indicating the dissimilarity of the security restrictions on minors while they are in either Commitment Track or Secure Track at BYA. Minor appears to be arguing that Commitment Track is a less restrictive alternative based on the limited length of time minors can be placed in Commitment Track and the additional programming minors in Secure Track receive.

the safety or suitability of committing the ward to a term of confinement in a secure youth treatment facility." (*Ibid.*)

Here, the record reflects that the juvenile court considered all the relevant evidence and required criteria and that substantial evidence supported the court's explicit finding that a less restrictive placement, such as placement in a non-secure treatment facility, would be unsuitable for Minor. Specifically, the evidence established that BYA's Commitment Track and Secure Track were the only secure treatment settings available in the county. Indisputably, the offense in this case was extremely serious and Minor's actions had severe, life altering consequences for the victim and his family. Beyond the seriousness of the offense, evidence was also presented concerning Minor's age, immaturity, and significant mental health issues. And though Minor's prior delinquent history was minimal, Minor had recently been on probation for about one year for bringing a BB-gun (which was modified to look like a real gun) to school after a fight with another student. Despite Minor's receipt of counseling and some programming while on probation, this prior treatment proved insufficient to rehabilitate Minor or to protect the community, as Minor went on to commit the instant offense with a "ghost gun."

Substantial evidence also supported the conclusion that placement in BYA's Commitment Track would be unsuitable for Minor. The testimony at the disposition hearing established that Commitment Track was only 10-and-a-half months long, which was shorter than Minor's year on informal probation, while Secure Track's timeline was based on the recommendation of the court. Similarly, Commitment Track provided only about 200 hours of cognitive based therapy, whereas the probation officer here pointed to research showing that "for some of [the] most serious offenders the minimum

13

amount of cognitive behavior treatment that has a significant impact is going to be approximately 300 hours." Moreover, Crowder testified that in Secure Track, youths receive an individualized rehabilitation plan with more options than in Commitment Track program, including programs like "Free Your Mind, a longer dosage of our interactive journaling, advanced practice and, also, [BYA's] vocational program and . . . college courses." Furthermore, Secure Track would provide Minor with access to mental health and psychological services, including weekly meetings with a mental health therapist, *throughout* his commitment.

Minor contends the finding of unsuitability should not be based on the seriousness of his offense alone, as section 875, subdivision (a)(3) requires consideration of all enumerated factors. But again, the record here reflects the court considered all relevant and material evidence presented and all of the factors set out in section 875. Section 875 does not require the court to assign weight to any of the criteria in a specific manner; it only requires that the court consider all of the criteria in making its determination. (§ 875, subd. (a)(3).) Thus we reject Minor's suggestion that the court misweighed the criteria or that it should have weighed them differently. In conducting a review for substantial evidence, we do not reweigh the evidence. The record here amply supports the court's finding that a less restrictive, alternative disposition would not be suitable for Minor.

In sum, we conclude the juvenile court did not abuse its discretion in committing Minor to BYA's Secure Track.

## DISPOSITION

The order of the juvenile court is affirmed.

FUJISAKI, J.

WE CONCUR:

TUCHER, P.J.

RODRÍGUEZ, J.

*In re D.J.* (A164486)