Filed 2/21/23  In re T.B. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re T.B., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B316027 (Super. Ct. No. MJ24402) (Los Angeles County) |
| THE PEOPLE, Plaintiff and Respondent, v. T.B., Defendant and Appellant. | |

T.B. challenges the juvenile court's dispositional order committing him to a Secure Youth Treatment Facility ("SYTF") after he admitted committing murder (Pen. Code, § 187, subd. (a)), an offense enumerated under Welfare and Institutions Code

section 707, subdivision (b).[1]  Appellant contends the juvenile court abused its discretion because substantial evidence does not support the juvenile court's finding that SYTF was appropriate to meet his needs or that a less restrictive alternative was not appropriate.  We affirm.

*Factual and Procedural Background*

On June 18, 2015, around 1:30 a.m., appellant broke into the home of an 86-year-old, non-ambulatory woman, as she slept in her bed.  Once inside, appellant retrieved a kitchen knife and began walking through the hallway towards the victim's bedroom.  When he bumped into a fire extinguisher, the victim awoke and began screaming.  Appellant entered her bedroom and stabbed her more than 40 times, killing her.  He then ran out of the house and down the street where he waited approximately five minutes to see if anyone called the police.  When no one responded, he returned to the victim's home and took the victim's laptop computer.

Appellant was arrested after he was found hiding near a bush and acting suspiciously.  He admitted that he entered the victim's home looking for money and valuables to steal and claimed that he stabbed the victim "five or six times."  He also told police that he chose the victim's home because he knew she was elderly and lived alone.

When he was arrested, appellant had the victim's blood on his clothes.  He also had her laptop computer in his backpack.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The People filed a wardship petition pursuant to section 602 alleging appellant committed murder (Pen. Code, § 187, subd. (a), count 1), and two felony counts of burglary with person present (*id.*, § 459, counts 2 and 3).[2]  At the time of the murder, appellant was on informal probation for thefts of cell phones and an iPod from his school office.  He also had an active bench warrant for his arrest after he violated probation by running away from home and refusing to participate in court-ordered services.

In October 2021, appellant, who was then 20 years old, had been detained at juvenile hall for more than six years.  He admitted the murder allegation and affirmed his understanding that the charged offense was an offense enumerated in section 707, subdivision (b), and that he could potentially be committed to SYTF up to the age of 25.  The juvenile court then set the matter for a contested disposition hearing.

*Contested Disposition Hearing*

In advance of the disposition hearing, the probation department prepared a report recommending appellant be declared a ward of the court and committed to SYTF.  The report provided a detailed evaluation of appellant's suitability for placement in a secure facility and considered several criteria.  For example, the report noted the severity of the offense and observed that appellant showed an escalation in his criminal behaviors.  Despite multiple intervention efforts leading up to his

---

2 Appellant's case was initially filed in adult criminal court, but due to several changes in the law, it went back and forth between the criminal and juvenile courts before it was eventually adjudicated in the juvenile court.

3

current offense, appellant demonstrated a lack of compliance and an unwillingness to participate in services.

Probation officer Wanda Falls, who prepared the report, testified that while appellant had participated in many services during his time at juvenile hall, and even described him as a "model resident," she did not believe he had fully rehabilitated because his programming addressed his prior offenses, not his current offense of murder.

Probation officer Falls explained that a less restrictive alternative disposition was not appropriate due to appellant's age and the severity of the offense. On the other hand, she believed SYTF was appropriate because it would provide for public safety as well as the services that appellant needed to achieve his rehabilitative goals. Additionally, within 30 days of the juvenile court's placement order, appellant would meet with a multi-disciplinary team who would evaluate his needs and prepare an individual rehabilitation plan for him.

Probation director, Suzanne Lyles, also testified that additional programs were still being developed as SYTF was in a transitional phase, but available programming included education services, mental health services including individual and family treatment, alternate programming such as Jail House guitars, Anti-Recidivism Coalition (ARC) mentorship and transitional planning, communication skills, art therapy, substance abuse counseling, religious services, and creative writing classes.

Appellant's defense counsel argued that appellant had suffered from trauma, ADHD, and substance abuse issues as a youth, but that he had availed himself of every program available to him in juvenile hall and had addressed those issues. Counsel

4

also argued that appellant was no longer the same person and that he had grown into a mature young man. Numerous witnesses testified on appellant's behalf as to his many accomplishments while at juvenile hall, including graduating from high school, achieving his associate degree, and becoming a trusted leader and positive influence among his peers. Defense counsel concluded SYTF was not appropriate and urged the juvenile court to impose the less restrictive alternative of community release.

*The juvenile Court's Ruling*

After hearing testimony and considering the evidence, the juvenile court declared appellant a ward of the court and ordered that he be committed to SYTF for the baseline term of seven years with a maximum confinement of 15 years to life. The juvenile court found that this commitment would address the goals of appellant's rehabilitation and public safety, and that a less restrictive alternative of camp, suitable placement, home on probation, or Magnolia House, which is a youth-focused transitional program offered through ARC, was not appropriate.

In making this finding, the juvenile court noted the severity of the offense and the harm done to the victim, her family, and the community; appellant's previous delinquent history and numerous unsuccessful attempts to rehabilitate him; appellant's treatment opportunities at SYTF; and that there were no limitations for appellant's treatment at SYTF regarding his age or mental and emotional health.

*Discussion*

Appellant contends the juvenile court abused its discretion in ordering him committed to SYTF because substantial evidence does not support the finding that the programming, treatment,

5

and education services offered there will meet his needs or that a less restrictive alternative is not appropriate.  Appellant's contentions are meritless.

A juvenile court may order commitment to a secure facility if each of the following criteria pursuant to section 875 is met: "(1) The juvenile is adjudicated and found to be a ward of the court based on an offense listed in subdivision (b) of Section 707 that was committed when the juvenile was 14 years of age or older.  [¶] (2) The adjudication described in paragraph (1) is the most recent offense for which the juvenile has been adjudicated.  [¶] (3) The court has made a finding on the record that a less restrictive, alternative disposition for the ward is unsuitable."  (§ 875, subd. (a)(1)-(3).)

We review the juvenile court's placement decision for an abuse of discretion.  (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1154.)  The juvenile court abuses its discretion """"when the factual findings critical to its decision find no support in the evidence."""" (*In re Carlos J.* (2018) 22 Cal.App.5th 1, 5.)  We will not disturb the juvenile court's findings when there is substantial evidence to support them.  (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288.)  """"In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law,"""" which includes public safety as well as the rehabilitation of the juvenile offender.  (*In re Carlos J.*, at p. 5, quoting *In re Calvin S.* (2016) 5 Cal.App.5th 522, 527-528; § 202.)

Appellant contends the programming, treatment, and education offered at SYTF is not appropriate for him because he has already availed himself of these programs while he was at

juvenile hall.  Moreover, he contends Probation officer Falls's testimony that appellant had not addressed his current offense during his six-plus years of therapy was speculative, and therefore not substantial evidence.

But Probation officer Falls was competent to give her opinion that appellant's programming up to that point had not addressed his current offense of murder because he had not entered a plea as to that offense and to require him to address it would be a violation of his constitutional rights.  Moreover, the evidence shows that appellant will have the opportunity to meet with a multi-disciplinary team who will evaluate him and prepare an individualized rehabilitation plan for him, which will include additional programming.

While appellant acknowledges that SYTF will offer a "few additional programs once it is 'up and running,'" he contends there is no indication when those programs will be implemented. According to appellant, SYTF's "plans for the future, without information as to when those plans would be implemented, cannot be considered actual, concrete evidence."  (See *In re Carlos J.*, *supra*, 22 Cal.App.5th at p. 12.)

Appellant's contention ignores evidence in the record that "some programming" is currently available to SYTF youths, including mental health services, substance abuse counseling, education services, religious services, and alternate programming.  Although the program will be more "robust" once it is fully developed, the juvenile court could reasonably infer that appellant would benefit from the available programming currently offered at SYTF, as well as programming that will be offered in the "near future."

7

Appellant next contends substantial evidence does not support the juvenile court's finding that Magnolia House was inappropriate. For example, he contends that unlike SYTF, Magnolia House was immediately available. He also contends his conduct over the past six years demonstrates that he does not need to be in a locked facility.

In order to commit a minor to a secure treatment facility, the juvenile court must make a finding that a less restrictive alternative disposition is unsuitable. (§ 875, subd. (a)(3).)

In making this determination, "the court shall consider all relevant and material evidence, including the recommendations of counsel, the probation department," and each of the following criteria: "(A) The severity of the offense or offenses for which the ward has been most recently adjudicated, including the ward's role in the offense, the ward's behavior, and harm done to victims. [¶] (B) The ward's previous delinquent history, including the adequacy and success of previous attempts by the juvenile court to rehabilitate the ward. [¶] (C) Whether the programming, treatment, and education offered and provided in a secure youth treatment facility is appropriate to meet the treatment and security needs of the ward. [¶] (D) Whether the goals of rehabilitation and community safety can be met by assigning the ward to an alternative, less restrictive disposition that is available to the court. [¶] (E) The ward's age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs affecting the safety or suitability of committing the ward to a term of confinement in a secure youth treatment facility." (§ 875, subd. (a)(3)(A)-(E).)

8

Here, the record shows that the juvenile court carefully considered all the relevant evidence and each required criteria in determining that a less restrictive placement was not suitable for appellant. The juvenile court expressly found that the less restrictive alternatives, including camp, suitable placement, and home on probation, were not suitable because of appellant's age and maturity. Additionally, the juvenile court expressed concern that Magnolia House did not provide sufficient security for the community. Although the evidence showed that appellant was doing well in juvenile hall, and the juvenile court believed he was "on the road to recovery and rehabilitation," it observed there was no evidence of how appellant would do in a less structured environment or that he had sufficiently rehabilitated enough to be released back into the public. We agree.

It is indisputable that appellant's crime was severe. He targeted the elderly victim based on her vulnerability. He entered her home late at night to commit theft from her and once inside, he armed himself with a knife. When she cried out, he stabbed her over 40 times. He was the sole actor exercising a degree of sophistication and callousness in carrying out the murder.

Moreover, appellant's prior delinquent history demonstrated that numerous intervention efforts had been made, but, as the juvenile court observed, nothing had impacted appellant in a positive way. Instead, he ran away, refused to participate in court-ordered rehabilitative services, and continued to engage in criminal behavior.

Based on our review of the record, we conclude substantial evidence supports the juvenile court's finding that appellant would benefit from the programming, treatment, and education

9

services offered and provided at SYTF and that a less restrictive alternative disposition would not be suitable for appellant. This determination is also consistent with the purpose of the juvenile court law, which provides for the protection and safety of the public, as well as appellant's rehabilitative objectives. (See *In re Nicole H., supra,* 244 Cal.App.4th at pp. 1154-1155; *In re Carlos J., supra,* 22 Cal.App.5th at pp. 5-6.)

Accordingly, the juvenile court did not abuse its discretion in ordering appellant committed to SYTF.

*Disposition*

The judgment (findings and order) is affirmed.

<u>NOT TO BE PUBLISHED</u>.


YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

10

Mario Barrera, Judge
Superior Court County of Los Angeles

_____

Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.