Filed 4/10/25  In re C.E. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re C.E., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> C.E., <br><br> Defendant and Appellant. | F088284 <br><br> (Super. Ct. No. JW119562-02) <br><br><br> **OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Marcus Cuper, Judge.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen and Chung Mi Choi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Meehan, Acting P. J., DeSantos, J. and Fain, J.[†]

[†]    Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Minor C.E. contends on appeal that the juvenile court's disposition order must be reversed and the matter remanded because there is insufficient evidence to support his commitment to a secure youth treatment facility (SYTF). The People disagree. We affirm.

**PROCEDURAL SUMMARY**

On May 7, 2024, a notice of violation of minor's probation was filed in Kern County Juvenile Court pursuant to Welfare & Institutions Code section 777, subdivision (a)(2),[1, 2] alleging minor violated the terms of his probation by failing to obey his parent.

On May 10, 2024, the juvenile court held an initial section 777 hearing. Minor denied the allegation.

On May 22, 2024, the juvenile court held a readiness hearing. The court ordered minor to remain detained in the youth detention center pending further proceedings.

On June 3, 2024, the juvenile court held a contested jurisdictional hearing. The court took judicial notice of the two underlying petitions in case Nos. JW119562-00 and JW119562-01, and all prior orders. The court found minor was a person described by section 777. It ordered minor to remain detained pending a contested disposition hearing.

On June 17, 2024, the juvenile court held a contested disposition hearing. The court found the available confinement time was three years and awarded minor 94 days of predisposition custody credits. The court committed minor to the Kern Crossroads Facility, a SYTF.

On July 1, 2024, minor filed a timely notice of appeal.

---

[1]    All statutory references are to the Welfare and Institutions Code.

[2]    The record indicates that a petition against minor was filed on September 28, 2021, alleging minor committed felony elder abuse (§ 368, subd. (b)(1)), with an applicable maximum term of confinement of three years.

# FACTUAL SUMMARY

Minor's mother testified at the May 22, 2024 readiness hearing and the June 3, 2024 contested jurisdictional hearing on the section 777 probation violation petition in case No. JW119562-02.

At the May 22, 2024 readiness hearing, minor's mother stated,

> "Right now, [minor's conduct is] verbal because he's on probation and he knows that he can't do anything else, but he just screams and yells and tells me exactly how everything is going to go, and it's always his way. And it goes on every night for about an hour and a half, and then I've had to lock myself in my room to get away from him. And then he tries to get into my room, and it just is a continual attack pretty much on me, sometimes, verbal attack. And I guess just swearing me out. And he's even admitted before that the only reason he's not doing anything physically is because he's still on probation, but I have seen him control himself. So I know he can do it."

At the June 3, 2024 contested jurisdictional hearing, minor's mother stated minor "want[ed] to be in charge" all the time in their home. He frequently followed her around the home and would not let her have any "peace." She stated he was in a state of "constant battle" and that she believed he was also stealing things from around the home. She testified he would frequently "scream[ ]" at her, even when she said she did not want to continue talking to him, and that she would lock herself in her bedroom to get away from him. However, she said he would continue screaming at her from outside her bedroom door and would attempt to unlock the door with a screwdriver.

She continued,

> "It just depends on what he wants at the time and the day. It's usually at nighttime. Not always. But usually at night. And depends on if he wants to go to bed or doesn't want to go to bed or if he wants something, and he wants his answer. And when I don't give it to him, he just yells give me the right answer now. Give it to me now. And it just continues to escalate. And I say I've already given you an answer. I'm not going to answer you anymore, and I just get quiet and that makes him angry. [¶] … [¶]

3.

"He just gets more escalated at being angry.  Because he's on probation, he doesn't do anything about it except yell.  [¶]  …  [¶]

"Well, in the past, it was because of physical abuse, but this time it's just that he won't leave me alone and won't stop yelling and bothering me. And like I said, he just irritates me enough that I can't take it anymore and I just want to be left alone, but he comes to the door and screams through the door or gets a screwdriver or something and tries to unlock the door.  And I ask him what are you going to do once you get in here?  And he says, well, I just want to talk to you, and I said, well, we've already talked."

## DISCUSSION

Minor contends the juvenile court abused its discretion when it committed him to a SYTF.  The People disagree.  We agree with the People.

### A.      Background

### May 24, 2024 Probation Report

The May 24, 2024 probation report recommended minor be committed to Kern Crossroads Facility, a SYTF.

It stated minor's mother submitted an application for petition on May 1, 2024, stating minor failed to obey her, and that " 'I am afraid for my life every day [because of minor] and never know what's going to happen.' "  She stated she filed the petition because minor was out of control and "[she] was losing [her] mind," and she did not want to continue living under the same circumstances going forward.

It stated minor's mother said all the circumstances that led to the petition were true, and that she believed minor needed to be held accountable for his actions.  However, she stated she was interested in minor being enrolled in a treatment program, rather than being held in custody.  She also stated she believed the youth detention center would be more appropriate for minor than commitment to a SYTF.

The report stated that since being placed on probation, minor had performed marginally, and that despite being referred all the resources available to aid in redirecting his behavior, he failed to do so.  Accordingly, the report stated the probation officer "felt

4.

the minor need[ed] higher sanctions due to his failure to abide by the terms of his probation." The report recommended minor be committed to Kern Crossroads Facility, a SYTF, because of his failure to obey his mother and the safety risk to his mother. The report stated, "It is felt a long-term commitment to [a SYTF] will afford the minor the opportunity to receive more intensive services, while affording him the tools needed to redirect his behaviors upon his release.… [M]inor has been afforded multiple opportunities to redirect his behavior and has failed to do so."

### June 17, 2024 Disposition Hearing

At the June 17, 2024 disposition hearing, the juvenile court committed minor to Kern Crossroads Facility, a SYTF.

Defense counsel argued commitment of minor to a SYTF was not appropriate because it would be the wrong environment for him. She stated minor had been using the services offered to him and attempting to redirect his behavior, although not necessarily with success, and had been attending school satisfactorily. She also noted that his previous physically violent behavior towards his mother had ended and that he was taking his medications and participating in counseling. She also argued he behaved well in the youth detention center and asked the court to have minor remain there for an additional period of time.

The prosecution explained minor was not suitable for commitment to camp based on a previous incident involving animal cruelty. He argued that although the petition was only for a probation violation, it was caused by the "same type of behavior that's just continuing.… [H]e's still not obeying his mother. She feels she can't control him.… [I]t is just still the same behavior that's persisting which hasn't been remedied yet." He explained, "And as to why the [prosecution's] requesting a commitment program is the minor has had multiple opportunities in the [y]outh [d]etention [c]enter, but these problems keep arising. They haven't fixed anything." He stated that although minor's mother was now asking for minor to be committed to the youth detention center, she

5.

originally "thought that a longer commitment program would be needed to hold him accountable and help him rehabilitate."

The juvenile court stated,

> "All right. So I do recall this, and when I was reviewing this, my big question was—because I do believe a commitment program is appropriate at this time based on everything before me. I thought camp would be a slightly less restrictive program, but I had forgotten about the information that I highlighted in the previous report regarding the animal cruelty.

> "So based on that, the Court has read and considered probation's report dated May 24th, 2024. I'll make the following findings and orders based on the information therein: The available confinement time is three years minus 94 days credit for time served. [C.E.], already a ward of the juvenile court, is continued on probation not to exceed his 21st birthday. He has been tried on probation, in the custody of his mother, and in the [y]outh [d]etention [c]enter and has failed to reform.

> "Previous orders of the Court have not been effective in his rehabilitation. Custody of the minor is taken from his mother and he is committed to [a SYTF]. He shall remain in the [y]outh [d]etention [c]enter pending delivery thereto and shall obey all rules and regulations of the [y]outh [d]etention [c]enter and said [SYTF] commitment program. Upon completion, he'll be released to the custody of his mother. All prior orders not specifically set aside or modified are to remain in full force and effect."

## B. Law

Section 202 provides:

> "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter." (§ 202, subd. (b).)

In deciding a minor's placement, " 'the juvenile court [has] maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it.' " (*In re James R.* (2007) 153 Cal.App.4th 413, 432; *In re Carlos J.* (2018) 22 Cal.App.5th 1, 7.)

Dispositional orders must conform with the purposes of juvenile delinquency laws, which are "twofold: (1) to serve the 'best interests' of the delinquent ward by providing care, treatment, and guidance to rehabilitate the ward and 'enable him or her to be a law-abiding and productive member of his or her family and the community,' and (2) to 'provide for the protection and safety of the public ….' " (*In re Charles G.* (2004) 115 Cal.App.4th 608, 614.) To accomplish these purposes, the juvenile court "has statutory authority to order delinquent wards to receive 'care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances.' " (*Id*. at p. 615; see § 202, subds. (a), (b), & (d).)

When determining the appropriate disposition in a delinquency proceeding, the juvenile courts are required to consider "(1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.) It must "consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford him adequate care." (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.)

A disposition hearing record should reflect evidence that the proposed means of rehabilitation will result in probable benefit to the minor, and that the goals of the juvenile law could not have been met by a less restrictive placement. (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1396; *In re Miguel C.* (2021) 69 Cal.App.5th 899, 906.) "After finding that a minor is a [ward of the court], the court shall hear evidence on the question of the proper disposition to be made of the minor. The court shall receive in evidence the social study of the minor made by the probation officer and any other relevant and material evidence that may be offered, including any written or oral statement offered by the victim …. In any judgment and order of disposition, the court shall state that the social study made by the probation officer has been read and that the social study and any statement has been considered by the court." (§ 706.)

Section 875 governs the commitment of a juvenile ward to a SYTF, which replaced the Department of Corrections and Rehabilitation, Division of Juvenile Justice as the most restrictive placement alternative. (*In re Tony R.* (2023) 98 Cal.App.5th 395, 406; *In re J.B.* (2022) 75 Cal.App.5th 410, 413, fn. 3; see § 736.5.) It provides, in pertinent part, that to commit a minor to SYTF:

"(a)(3) The court has made a finding on the record that a less restrictive, alternative disposition for the ward is unsuitable. In determining this, the court shall consider all relevant and material evidence, including the recommendations of counsel, the probation department, and any other agency or individual designated by the court to advise on the appropriate disposition of the case. The court shall additionally make its determination based on all of the following criteria:

"(A) The severity of the offense or offenses for which the ward has been most recently adjudicated, including the ward's role in the offense, the ward's behavior, and harm done to victims.

"(B) The ward's previous delinquent history, including the adequacy and success of previous attempts by the juvenile court to rehabilitate the ward.

"(C) Whether the programming, treatment, and education offered and provided in a [SYTF] is appropriate to meet the treatment and security needs of the ward.

"(D) Whether the goals of rehabilitation and community safety can be met by assigning the ward to an alternative, less restrictive disposition that is available to the court.

"(E) The ward's age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs affecting the safety or suitability of committing the ward to a term of confinement in a [SYTF]." (§ 875, subd. (a)(3).)

Where a ward has a multi-year history of failed placements, the court may order a SYTF commitment to protect the minor and the public. (See *In re A.R.* (2018) 24 Cal.App.5th 1076, 1080–1082.)

The standard of review in juvenile commitment decisions is abuse of discretion. (*In re Joey G.* (2012) 206 Cal.App.4th 343, 346.)  A court abuses its discretion when it acts " 'in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.  [Citations.]' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125, abrogation recognized by *People v. Leon* (2020) 8 Cal.5th 831, 848.)  Reviewing courts " 'must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them. [Citations.]' " (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 53.)  Unless the record is entirely devoid of evidence to support the court's factual findings, the decision to commit a minor should not be disturbed.  (*Nicole H.* (2016) 244 Cal.App.4th 1150, 1154.)

" 'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.)  " ' "In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law." ' " (*In re Oscar A.* (2013) 217 Cal.App.4th 750, 756.)  Accordingly, "when we assess the record in light of the purposes of the Juvenile Court Law [citation], we evaluate the exercise of discretion with punishment and public safety and protection in mind." (*In re Lorenza M.*, *supra*, 212 Cal.App.3d at p. 58.)

### C. Analysis

Here, there is sufficient evidence to support the juvenile court's commitment of minor to a SYTF.

The juvenile court heard counsel's arguments and stated that it read and considered the probation report.

The probation report recommended minor be committed to a SYTF because of his failure to obey his mother and the safety risk to minor's mother.  It stated that since being placed on probation, minor had performed marginally, and that despite being referred all

9.

the resources available to aid in redirecting his behavior when placed on probation, he failed to do so. Accordingly, the report stated the probation officer "felt the minor need[ed] higher sanctions due to his failure to abide by the terms of his probation." It stated minor's mother submitted the petition for minor's probation violation because minor failed to obey her, and that she was " 'afraid for [her] life every day [because of minor] and never kn[ew] what[ was] going to happen.' " She stated she filed the petition because minor was out of control and " '[she] was losing [her] mind,' " and did not want to continue living under the same circumstances going forward. The report stated, "It is felt a long-term commitment to [a SYTF] will afford the minor the opportunity to receive more intensive services, while affording him the tools needed to redirect his behaviors upon his release.… [M]inor has been afforded multiple opportunities to redirect his behavior and has failed to do so."

The juvenile court stated it was considering whether a SYTF was an appropriate disposition for minor, "based on [all the evidence] before me," as required by section 875, subdivision (a)(3). The court then explained it had considered the less restrictive, alternative disposition of camp, but that minor did not qualify for placement in camp because he was involved in an earlier animal cruelty incident. It then stated that, based on the information before it, it was placing minor in a SYTF, because "[p]revious orders of the Court have not been effective in his rehabilitation."

Here, the juvenile court's statement that it considered the probation report, as required by section 706, shows it appropriately considered the required factors under section 875, subdivision (a)(3), as all of the factors under section 875, subdivision (a)(3)(A) through (E) were discussed by the probation report in its recommendation for minor's commitment to a SYTF.

Pursuant to section 875, subdivision (a)(3)(A), the probation report considered by the juvenile court discussed the severity of minor's most recent offense, his probation violation, his role in the offense, his behavior, and the harm done to the victim, his

10.

mother. It stated he was disobeying her to the extent that she was " 'afraid for [her] life every day and never kn[ew] what[ was] going to happen.' " The court also heard her testimony during the readiness hearing that she was so afraid of minor that she was locking herself in her room most nights.

Pursuant to subsection (a)(3)(B) of section 875, the probation report also discussed minor's delinquent history and failures of previous attempts at rehabilitation. The juvenile court confirmed it considered this factor, as it stated that "[p]revious orders of the Court have not been effective in [minor's] rehabilitation."

The record also reflects the court's consideration of section 875, subdivision (a)(3)(C), of whether the "programming, treatment, and education offered and provided in a [SYTF] is appropriate to meet the treatment and security needs of the ward," as the probation report stated, "[i]t is felt a long-term commitment to [a SYTF] will afford the minor the opportunity to receive more intensive services, while affording him the tools needed to redirect his behaviors upon his release.…"

Pursuant to subdivision (a)(3)(D) of section 875, the record also shows the juvenile court considered "[w]hether the goals of rehabilitation and community safety can be met by assigning the ward to an alternative, less restrictive disposition that is available to the court." Here, the probation report stated, "minor has been afforded multiple opportunities to redirect his behavior [when assigned to an alternative, less restrictive disposition] and has failed to do so," and recommended minor be committed to a SYTF because of his failure to obey his mother and the safety risk to minor's mother. The court also stated it had considered the less restrictive, alternative disposition of camp, but that minor did not qualify for placement in camp because he was involved in an earlier animal cruelty incident and that "[p]revious orders of the Court [placing minor in an alternative, less restrictive disposition] have not been effective in his rehabilitation."

Last, the record shows the juvenile court considered the requirement of section 875, subdivision (a)(3)(E), to consider minor's "age, developmental maturity,

11.

mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs affecting the safety or suitability of committing" minor to a SYTF, as the probation report discussed those factors and that minor's mother wanted him committed to a less restrictive, alternative disposition, and the court heard minor's mother's testimony during the jurisdictional hearing that she would prefer he be committed to an alternative, less restrictive disposition, despite earlier stating that she thought that a longer commitment program would be needed to hold him accountable and help him rehabilitate.

Minor also argues the juvenile court erred when it placed him in a SYTF, rather than returning him to the youth detention center, because he had "already succeeded" when placed in youth detention, showing placement in the less restrictive program would be successful. However, as the court stated, it did not believe the youth detention center offered the appropriate services to rehabilitate minor, and that the more extensive services offered at a SYTF would be beneficial to him.

Accordingly, in light of the dual purposes of juvenile law to rehabilitate minor and protect the public, there is sufficient evidence to support the juvenile court's commitment of minor to a SYTF. As the juvenile court's statement reflects, the proposed means of rehabilitation of committing minor to a SYTF will result in probable benefit to minor, and the goals of the juvenile law of protecting the public, including minor's mother, and rehabilitating minor, could not have been met by a less restrictive placement. (See *In re Michael D.*, *supra*, 188 Cal.App.3d at p. 1396; *In re Miguel C.*, *supra*, 69 Cal.App.5th at p. 906; see *Nicole H.*, *supra*, 244 Cal.App.4th at p. 1154 [Unless the record is entirely devoid of evidence to support the court's factual findings, the decision to commit a minor should not be disturbed].)

## DISPOSITION

The disposition order is affirmed.

12.